*Shreve, Crump & Low Company, Respondent, v. Edward Holbrook and Another, Appellants, Impleaded, etc.*— Judgment modified by deducting therefrom interest on $5,636.68 from October 20, 1891, to April 4,

1893, and, as modified, affirmed, without costs.—

PARKER, J.: This suit was brought to compel an accounting by the defendants for certain property which came into their hands as trustees under a deed of trust. In November, 1889, Theron J. Blakeslee made a general assignment for the benefit of his creditors to John J. Connolly. During the following month of December Edward Holbrook was substituted as assignee under such assignment, in which plaintiff was preferred as a creditor. July 23, 1890, Holbrook, together with Norton and Crump, took possession of the assigned estate in pursuance of the terms of a trust agreement entered into by all interests, including the creditors of Blakeslee. This trust instrument provided for the continuance of the business of importing, selling and dealing in oil paintings for the period of three years. Prior to the failure of Blakeslee he was conducting at his store, in addition to his business of dealing in paintings, a bric-a-brac department, which was carried on by him under a written agreement for consignment entered into between himself and this plaintiff. Briefly, the agreement provided that plaintiff should consign bric-a-brac to Blakeslee and allow him $3,000 per annum towards the payment of the rent of the store, in consideration of which Blakeslee was to sell goods at his own expense and guarantee payment of all sales, and to divide the gross profits equally with the plaintiff. After the making of the general assignment, the business was carried on by the substituted assignee in precisely the same way. Immediately upon taking possession under the trust instrument, Holbrook, one of the trustees, informed Mr. Crump, another trustee, and the general manager of the plaintiff, that if the bric-a-brac business should be continued, there should be a division of expense, and if that could not be done it should no longer be continued. Conversations and correspondence between the parties followed this statement of Holbrook, from which it is fairly to be gathered that it was the opinion of the plaintiff's general manager that the request was reasonable and one likely to be granted as soon as there could be a meeting of the board of directors. The board of directors never did meet, or, at least, if they did, no affirmative action was taken accepting the suggestion or proposition of Holbrook as to the basis upon which should be conducted the bric-a-brac business. That there should be a division of the expenses incurred by the trustees in the bric-a-brac department constituted the first counterclaim of the defendants. It is not questioned that the acceptance of the original contract between plaintiff and Blakeslee, the proceedings thereunder by Holbrook as substituted assignee, during the term he was in possession of the property in such capacity, the acceptance of the trust by the trustees by which the rights under the original contract with plaintiff was transferred to the trustees, and their subsequent action in receiving the benefits of the contract, operated to continue in force the original contract unless there was a modification of it, either by positive agreement or by such action as would estop one of the parties from denying the modification alleged by the other. The appellants insist that the evidence establishes their claim of a modification upon both grounds. It would seem, however, from the testimony of Trustee Holbrook that he did not understand that there was such a modification of the original agreement as was binding upon the plaintiff. He testifies that while he was substituted as-

signee he made the point that the expenses as well as the profits should be divided equally, but nothing was done about it. That when he became trustee under the trust instrument he brought the matter up at the first meeting of the trustees, but that there was no resolution or formal action taken on the subject. The matter was discussed and Mr. Crump, who was one of the trustees, as well as manager for the plaintiff, committed himself personally to a modification of the agreement as proposed by Holbrook, and promised to lay it before the company and recommend it to the board of directors. Holbrook does not claim that Crump promised to do more than recommend it to his board, and says that he understood perfectly at the time that in order to bind the parties there would have to be action taken by the plaintiff's board of directors, and, as we have already observed, such action was never taken. Nor does it appear that any agent of the plaintiff, having authority to do so, united with the trustees in a modification of the original contract. Under this head then the question remaining is whether appellants are right in their assertion that the plaintiff is estopped from denying that there was a modification of the agreement or a new agreement in the terms contended for by the plaintiff ? It is apparent from what we have said, in discussing the alleged agreement for a division of profits and expenses, that the defendants, in effect, seek to estop the plaintiff from denying the existence of such an agreement on the ground that they were led to believe that it would be made. Of course we are not expected to sanction any such position, and it is due to the learned counsel for the appellants to say that he does not express in words what we say he contends for in effect. He urges that they were misled by the plaintiff's acts and silence into believing that the modification of the agreement had been made. But in this position he is not supported by the testimony, for while Holbrook asked for a modification and Crump agreed to recommend it, and Shreve wrote, " \u we will hope to arrive at some satisfactory agreement," and again, "While no action has been taken by our board of directors, which cannot get a quorum together since Crump's absence, the conversation incident to it has all seemed to be indicative of a feeling to accept it substantially as you propose." Still there was no meeting and no formal acceptance, as the defendants well knew. The defendant Holbrook testified that he understood that there could be no agreement until formal action was taken by the plaintiff's board of directors. He was not misled, therefore, into supposing that the agreement had been modified as he had requested. He merely expected that it would be. His expectation was founded on the expressed opinions of two of plaintiff's officers, but he knew that they could not bind, and were not attempting to bind, the plaintiff; that they as well as he were waiting for the formal action of the board, which was never taken. Upon such a foundation there cannot be predicated an estoppel. Appellants make the further point that the trustees were entitled to an accounting of the profits made by the plaintiff on two Monticelli paintings purchased in France during the summer of 1890, on the advice of Watson, whose salary the trustees were paying. This claim constituted defendants' second counterclaim. The decision of the trial court was necessarily founded upon a determination of fact that the Monticelli paintings were not purchased by Watson or any one else for the defendants. There is evidence that the discovery of the Monticellis was

made by Mr. Fenwick, the agent in Paris and Europe of the Shreve, Crump & Low Company, who consulted Mr. Watson about it, and was by him advised to purchase. The only other connection that Watson seems to have had with the pictures was that he privately exhibited them in New York to a Mr. Lambert, who subsequently became the purchaser. There are some features of the evidence which suggest that had the purchase of the Monticellis not turned out to be very profitable the trustees might have been permitted to bear the loss or accept a moderate price. While this is so, there is evidence of a substantial character that the paintings were bought by Fenwick in the first instance for his own account, and afterwards sold by him to the plaintiff. The finding of the trial court, therefore, has such support in the evidence as requires its affirmance. The further position is taken by the appellants that they are entitled to a modification of the judgment, so that it will provide that the costs and expenses of administering the trust shall be paid out of the proceeds of the trust estate before the judgment in question shall be paid. Ordinarily the position would be right, and it was our first impression that the modification requested should be granted, because in accordance with a proper construction of the trust agreement. But, on examining the record, we find a stipulation by appellants' counsel, made in open court, " that the assets were $81,801.62, while the liabilities were only $26,166.46. That is, liabilities in the execution of the trust." We cannot conceive that the stipulation had any other purpose than to assure the court that the assets were ample to defray the expenses of the trust, and afterwards pay such sum as plaintiff should recover in full. As the stipulation carried that assurance to the court, and must have been intended to do so, we do not think appellants at this time are entitled to a modification of the judgment in such respect. We think the appellants' claim that the judgment was wrong in so far as it allowed interest to plaintiff from October 20, 1891, to April 4, 1893, is well founded. The prayer for relief in plaintiff's complaint demanded interest from April 4, 1893. There was no amendment of the complaint during the trial respecting the allegations as to interest. There was no suggestion, as far as we have observed, during the progress of the trial, that plaintiff was entitled to interest prior to the termination of the trust. The suggestion of respondent's counsel to the court, as appears from the record, was distinctly otherwise; he said: " We would be entitled to interest at the expiration of the three years is our contention." The three years did not expire until about July, 1893. Whether the plaintiff could have recovered interest for any period prior to that time, had it been in a position to ask for it, is not passed upon. It was not entitled to recover interest prior to April 4, 1893, because it did not demand it in its complaint, and permitted the trial to close without altering its position. The judgment should be modified by deducting therefrom interest on $5,636.68 from October 20, 1891, to April 4, 1893, and, as modified, affirmed, without costs to either party. Van Brunt, P. J., and Follett, J., concurred.