---

(24 Misc. Rep. 65.)

## In re SHERMAN.

(Surrogate's Court, Rensselaer County. June, 1898.)

1. CONTRACT TO DEVISE—EVIDENCE.

    A widow owned a farm on which new buildings and fences were needed, and she would have to hire help to work the farm. She owed $2,100. Her two sons took the management of it, made the improvements, tilled the farm, paid part of the debt, and assumed the rest. Several witnesses testified to hearing her say that she had agreed to devise the farm to her sons in consideration of their making the improvements and assum-

ing the debt, which was not denied by any one. *Held,* that the agreement to devise was established.

2. SAME—BREACH—RIGHTS OF PARTIES.

Where two sons made improvements on a farm, and assumed a debt of their mother under her oral promise to devise the farm to them, which she failed to do, but devised it to one of them, the other, though the agreement be void under the statute of frauds, could recover against her estate on a judicial settlement, sufficient to compensate him for his share of the money paid and services rendered; and this though he was an executor of testatrix.

3. SAME—PERFORMANCE.

Where one agreed to devise her farm to her two sons in consideration of their making improvements thereon and assuming a debt of hers, the legal import of the agreement was to devise to them each a separate estate; and on her failing to do so, but devising it to one of them, the claim of the other is not satisfied nor affected by the devise to the first brother.

4. SAME—RECOVERY IN ASSUMPSIT.

An agreement to devise a farm in consideration of improvements made and debts assumed being void under the statute of frauds, it cannot be accepted as fixing the measure of recovery, which should be on an implied assumpsit.

5. INTEREST.

Where an agreement is void, and recovery is had on an implied assumpsit, plaintiff is not bound by an implied condition in the void agreement that the obligation shall not draw interest.

6. SAME—WHEN ALLOWED.

Interest will not be allowed on a claim where claimant failed to demand it either in his complaint or on the trial.

7. WILLS—LEGACY TO CREDITOR.

An unconditional legacy to a child, who is also a creditor, where the relations between parent and child are harmonious, will be presumed not to be in payment of an unliquidated debt, where the legacy was less than the debt, and payment thereof was postponed for two years after the decease of testatrix, and the debt was to be paid by a devise of land instead of by legacy.

Proceedings on a judicial settlement, by Frank A. Sherman against the estate of Waity Sherman, deceased, to establish an agreement on the part of testatrix to devise her farm to him and his brother. Decree.

Lansing & Holmes, for claimant.

Eugene Bryan and C. S. McChesney, for executor Calvin W. Sherman.

COMSTOCK, S.  That claimant has established an agreement on the part of testatrix to devise her farm to him and his brother Calvin, in consideration of their making improvements thereon and paying her debt to Lydia Sherman, there can be no doubt.  To be sure, there is no direct testimony as to such agreement; but several witnesses swear that they each, at different times, heard testatrix say that she had made such an arrangement with them, who are not only uncontradicted, but Calvin himself, who is one of the executors and sole devisee, although on the stand as a witness, and examined at length on behalf of the estate and against this claim, and who must have known whether such agreement ever existed or not, does not attempt to deny it.  It is further evidenced by the fact that the boys, immediately after the alleged date thereof, commenced making im-

provements on the farm of a permanent character, such as the erection of buildings, viz. a wagon house, sheep barn, ice house, tool and hen house, and also established a system of drainage thereon, constructing closed and open ditches, laid tile, built stone walls and new fences, involving an expenditure of several hundred dollars, and also assumed the said debt of testatrix of $2,100, for which they gave their note less $300 of principal and $105 of accrued interest, which they then paid in cash. Excluding the inducement of this promise to them, no explanation is given for this large outlay of money, and, in addition, the taking upon themselves of an $1,800 debt of the testatrix, from which she was in consequence released. There are no suspicious circumstances attending this alleged arrangement. On the contrary, it was a most natural and probable thing, and the conditions in which these parties lived at the time afford the very strongest presumption in favor thereof. The testatrix was a widow, well along in years, yet perfectly free from any impairment. Her two sons were living with her on the farm, both young men. Frank had just brought home a wife. The farm comprised about all the property she owned. The buildings were old, and new ones as well as new fences must be built. This debt of $2,100 had to be paid. If the farm was worked, she had to hire labor therefor. What more natural than that she should say to her sons, "Take this burden from my shoulders, and I will give you the farm when I am done with it"? There are many cases of claims presented against estates of deceased persons which demand the closest scrutiny and examination, and which should be allowed only upon the clearest and most convincing proof; but this rule has no application where there are no suspicious circumstances, but, instead thereof, a strong presumption as to its justness. Neither can there be any doubt of the full performance of this agreement by the sons. They paid about April 1, 1883, and immediately after this arrangement, $300 of the principal of their mother's said debt, and $105 of interest then owing, and gave their note for the $1,800 remaining. That this particular note was given is disputed by the contesting executor, but it is wholly immaterial whether it was or not. They concededly paid the $2,100 debt down to $1,300; and on July 1, 1885, they gave their note for that balance, and the mother was released. It then became their debt, and she had no legal interest or concern whether it was paid by them or not. So far as she was concerned, it was paid. As to the improvements, they were to make such only as they saw fit. The kind and extent thereof was left to their discretion, and this fact can be cited as a further evidence of an agreement that they should have the farm. The testatrix evidently thought it safe to so leave it, as they were eventually to become the owners, which confidence was fully justified by what they subsequently did. In 1894 she made her will; and instead of devising the farm to her sons, as she had promised to do, she gave it to one of them, Calvin, who is now in possession thereof, subject to a legacy charge of $500, in favor of claimant. In other words, although they contributed equally in the fulfillment of the conditions on which they were to have the farm, she gives one five times as much as the other, and to him she gives money instead of the land. The ques-

tion now arises whether this was such a performance on her part of said agreement as releases her estate from liability. It is true that her sons have got the farm between them, and it is equally manifest that the division she has made is unfair to claimant. From a moral standpoint, to say the least, she should have devised it to them equally; then no question could have arisen. But, as the case stands, the claimant takes no title, and is given a lien only, and for an amount insufficient to compensate him for his share of the money paid and services rendered. He is certainly entitled to compensation, which right has survived the testatrix, and exists solely because of her failure to do as she agreed. She was under no legal obligation to devise her farm to them; but, having obtained large benefits on the strength of her promise so to do, her estate is liable for remuneration in case of her failure to perform. By making the disposition she did, the claimant is compelled to seek redress or suffer loss. Although he and his brother acted jointly, they were not co-partners. Her contract was with them as tenants in common, and whatever right vested in them or either of them upon their performance, either for a specific performance or for compensation, was held by them as such. The legal import of her agreement was to devise to them each a separate estate, which each would hold in severalty, and which he could convey by separate deed. Ger. Tit. Real Est. (4th Ed.) p. 300; 1 Rev. St. p. 727, § 44. This she has not done, so far as the claimant is concerned. His claim was not satisfied nor affected by the devise to his brother. Goch v. Keneda, 29 Barb. 120; Lansing v. Bliss, 33 N. Y. Supp. 310. It is claimed, however, that he is not entitled to recover his share; but I do not think that this contention is correct. The claimant is an executor. He cannot sue himself, and his only remedy is in this court on a judicial settlement. His brother, who is coexecutor and sole devisee, is a party in both characters, and stands in an attitude antagonistic to the claimant. If this was an action, he could have been made defendant (Code Civ. Proc. § 448) in case his share had not been satisfied; but this would be necessary only to have him before the court as an interested party. His refusal to join in, and his repudiation of, the claim, would entitle the claimant to recover his share. Shakespeare v. Markham, 72 N. Y. 400.

But, so far as the brother is concerned, the testatrix has performed, and he is in possession of the whole farm, as devisee. So long as this situation continues, he has no claim either for specific performance or compensation. He has been settled with, and the rule is that the other has his separate remedy for his share. Lansing v. Bliss, supra. In considering how much he is entitled to recover, the agreement, being void under the statute of frauds, cannot be accepted as fixing the measure, although it was said in Lisk v. Sherman, 25 Barb. 433, Burlingame v. Burlingame, 7 Cow. 92, and Fort v. Gooding, 9 Barb. 376, that it could be. The rule is, in such cases of void contracts, that there is an implied assumpsit on the part of the defaulting party to reimburse the other to the extent of the value of his services or the money he had expended. Day v. Railroad Co., 51 N. Y. 583; Reed v. McConnell, 133 N. Y. 425, 31 N. E. 22. The evidence shows that the claimant's share amounts to $693.60, and I think he would

be entitled to interest thereon from a time prior to the date of the death of testatrix had he demanded it in his complaint or on the trial. It is true that by the terms of their agreement they were not to be compensated until her death, and no action would lie thereon until then. Quackenbush v. Ehle, 5 Barb. 469; Campbell v. Campbell, 65 Barb. 639; Bonesteel v. Van Etten, 20 Hun, 468; Day v. Railroad Co., 51 N. Y. 583. But when one party to such agreement, who has received benefits from the other in reliance thereon, makes default, the one who has performed has a remedy, not on the void agreement, but on an implied one to compensate him. Judge Earl says, in the Day Case:

"While the law in such case will not sustain an action based upon the agreement, it still recognizes its existence, and treats it as morally binding. * * * A party who has received anything under such an agreement, and then has refused to perform it, ought in justice to pay for what he has received; and hence the law, for the purpose of doing justice to the other party, will imply an assumpsit."

In the Reed Case, Judge Andrews says:

"The law in such case will raise an implied assumpsit in favor of the other party to accomplish justice and prevent fraud.".

It would be doing but partial justice to limit the implied agreement to the payment of the principal. In this case the claimant has lost the use of his money for years, and the testatrix has had the benefit thereof. He was in no position to demand payment before her death, for the law assumed that she would discharge her moral obligation. She having failed, the plainest equity demands that she should not profit thereby, but should return to the claimant all she received from him, which includes the value of the use of his money and services; but the claimant having failed to ask, either in his complaint or on the trial, for interest prior to the death of testatrix, the computation must be from that time. Shreve v. Holbrook, 87 Hun, 621, 34 N. Y. Supp. 317. The proceeding in which this claim incidentally arises is the judicial settlement of the estate of testatrix, which involves the determination of all matters necessary to a full and complete distribution; hence it is proper at this time to consider the effect of the $500 legacy to the claimant. If it was intended as a bounty, he is entitled to it in addition to his above claim. On the other hand, if the intention of testatrix was to thereby perform in whole or part her said agreement, or to pay his said claim, then, when paid, it must be deducted. The general rules applicable to legacies to creditors, independent of any agreement to compensate them by will, would be against the presumption that she intended it as payment, and for the following reasons: First, the amount was less than the debt; second, the debt was unliquidated; third, the payment is postponed until two years after her decease. Reynolds v. Robinson, 82 N. Y. 103; Williams v. Crary, 4 Wend. 443, 449. But these facts would not control if there was an agreement by the testatrix to pay her obligation by her will, and she had made such a provision as would show that she was thereby intending to carry out her agreement.

In the present case the testatrix made no agreement to give the claimant a legacy. She agreed to devise her farm to him and his

brother. He was to have land, not money; and, had she done as she agreed, he would have received three times as much as she gave him. She gives the whole farm to the brother, subject to this legacy. Can it be said, under such circumstances, that she was attempting, by the provision she made, to carry out her agreement with the claimant. It lacks every element of performance. What she gave him was wholly different in kind and quantity from what she agreed, and the delivery was postponed for two years beyond the time agreed on. So radically different is the scheme she adopted from the one she promised that I am led irresistibly to the conclusion that, instead of intending to consummate it, she deliberately ignored it. Certainly, what she gave Calvin, beyond his half interest in the farm, was by way of bounty. There would be more plausibility in the claim of payment, by the legacy to Frank, if he was not her son. Some allowance must be made for the fact that he was a natural object of her bounty, and not a mere stranger. The agreement which the law implies, viz. that she would compensate the claimant in money, is not the one she promised to perform by her will. As to that, he stands as a mere creditor of the estate. Her intention is to be measured by what she did, viewed in the light of what she agreed to do. I do not think that an unconditional legacy to a child of a testator, who is also a creditor, should be presumed to be in payment of the debt. The presumption is that it is a bounty, unless the will itself shows that such was not the intention, either by its terms or identity in amounts. It would be otherwise, however, if he had agreed to compensate him by such a legacy as was given, because the legacy, corresponding in amount and character with the agreement, would be a performance thereof, and would, in such case, be considered as so intended by the testator; but if the agreement was to devise a particular parcel of real estate as compensation, and instead thereof he bequeathed him $500 in money, the will being silent as to the intent, no presumption can arise that it was intended as payment, when, as I say, the legatee is a child of testator, and the relations between them were harmonious and pleasant. In such a case the inference would be that the bequest was made by the testator as parent rather than as debtor of the legatee. There is nothing in this view antagonistic to the remarks of Judge Andrews in Reynolds v. Robinson, above cited. I do not believe that the testatrix intended to disinherit her son; and, if his brother's contention is correct, such would be the result. There are no circumstances justifying such conclusion. She had no reason for so doing. She does remember him in her will, and unqualifiedly gives him $500. At the same time she provides for her other son, the only remaining child, Almer, who was to have money in her lifetime, which was probably done, as he makes no claim, and nothing indicates any dissatisfaction on his part. Under such circumstances the gift to Frank must be regarded as one from a mother to her son, and not from a debtor to a creditor. Decreed accordingly.