1. PARENT AND CHILD—SERVICES—COMPENSATION—PRESUMPTION.
    Where services were rendered to testatrix by claimant while the latter
    was residing with the former, and occupied toward her the relation of a
    child to a parent, it will be presumed that the services were rendered
    gratuitously.

2. SAME—EVIDENCE.
    The presumption that services rendered to testatrix by claimant while
    the latter was living with the former as a member of her family were
    rendered gratuitously may be overcome by proof that payment for the
    services was intended by both parties, and, when so overcome, claimant
    is entitled to recover the reasonable value of the services from the estate.

3. SAME—STATEMENTS OF PARTIES.
    Where claimant resided with testatrix as a member of the family, ren-
    dering certain services, the presumption that the services were gratuitous
    may be overcome by statements of testatrix that she intended to pay for
    them, providing such statements are numerous, clearly established, and
    made in part in the presence of the claimant.

4. SAME—DEVISE AS SATISFACTION.
    Claimant rendered services to testatrix while residing with the latter
    as a member of her family.   Testatrix was without relatives or husband,
    and, by will, after directing payment of all her debts, devised property to
    claimant.   Held, that the devise would not be regarded as payment of the
    amount due for the services.

5. HUSBAND AND WIFE—RIGHT OF HUSBAND TO WIFE'S EARNINGS—WAIVER.
    A husband may, independently of the statutes, waive his right to his
    wife's earnings, so as to entitle her to recover them in her own name. .

Judicial settlement of the accounts of Rollin S. Kingsbury as executor
of the will of Emma J. Dailey, deceased.   Decree rendered.

A. J. & J. Knight, for executor.
Spring & Spring, for Carrie I. Burlison, a creditor.
W. H. Harding, for Board of Church Extension and the Missionary
Society of the M. E. Church.

DAVIE, S.   Emma J. Dailey died at Freedom, Cattaraugus county.
October 17, 1902, leaving a will bearing date February 12, 1900, and
a codicil thereto dated July 8, 1902.   Such will was admitted to probate
January 8, 1903, and letters testamentary thereon issued to Rollin S.
Kingsbury.   Carrie Burlison presented to the executor a claim against
the estate for $907.50 for services rendered by her for the testatrix.
This claim was rejected by the executor, and a stipulation was filed
providing for the determination of such claim by the surrogate on the
judicial settlement of the estate, and the only controversy on this ac-
counting relates to the validity of such claim.

Testatrix died at the age of 62 years, leaving, her surviving, no hus-
band, heir at law, or next of kin, and possessing personal property of
the value of $5,000, and real estate of the value of $2,600.   Her hus-
band died March 10, 1899.   By the first item of her will, testatrix di-
rected the payment of all her just debts and funeral expenses.   By

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 733 [v].

the second item she bequeathed $1,000 to her executor in trust, directing the same to be kept invested, and the interest accruing thereon to be paid annually to the claimant during her life, and further directing and empowering the trustee to pay to the claimant such portion of the principal, from time to time, as, in his judgment, the beneficiary might require, or to pay to her the entire principal upon her marriage. Testatrix also bequeathed to the claimant all her household goods, clothing, and ornaments. The residue of the estate was given to "The Missionary Society of the M. E. Church" and the "Church Extension Society of the M. E. Church." Then follows this statement:

"The legacy herein made to said Missionary Society is to be considered as a memorial for and on account of my late beloved husband, Rev. Charles S. Dailey and of his affection and interest in this work; and the legacy to the said Church Extension Society is to be considered as a memorial for and on account of my beloved son Charles H. Dailey, who died in early life."

By the terms of the codicil of such will, the trust, as above stated, was revoked, and the testatrix devised to the claimant her farm in Freedom, of 109½ acres, for and during the term of her natural life, with the reversion to her children, her surviving, share and share alike; and, in case the claimant should die leaving no child her surviving, then the testatrix devised to George Burlison, the husband of the claimant, an undivided one-third part of said lands after the claimant's death.

Claimant began residing with the testatrix and her husband at the age of 18 months. Although never formally adopted, she assumed the name of Dailey, and resided with and constituted a part of the family of the testatrix to the time of her death, and during all of such period the practical relation of parent and child existed between the claimant and the testatrix. The claim presented is for services rendered by the claimant to the testatrix after the death of Mr. Dailey. The proof of the rendition of extensive and meritorious services is entirely satisfactory and substantially undisputed. Such services consisted of ordinary housework, occasional farmwork, feeding and caring for the cattle, and attending Mrs. Dailey when she was sick or required attendance.

Three propositions are urged in opposition to the validity of the claim: First, that, in consequence of the relationship existing between the parties, such services were presumptively gratuitous; second, that the beneficial provision of the will in favor of claimant should be regarded as full compensation; and, third, that claimant is not entitled to recover for any services rendered after her marriage, her earnings from that time belonging to the husband.

In view of the relations existing between the claimant and testatrix —a mutually acknowledged relation of parent and child—it is incumbent upon the claimant, before she can recover, to overcome by satisfactory proof the presumption that such services were rendered gratuitously. The law usually implies a promise to pay upon proof of the rendition of meritorious services, but when such services are rendered by one member of a family for another, evidently prompted by affection, or in consequence of reciprocal and mutual obligations, this presumption fails; another takes its place. Then the law presumes that no compensation was intended or expected. This, however, is not

proof, but merely a presumption. A "presumption" is defined by Best as "an inference, affirmative or disaffirmative, of the truth or falsity of any proposition of fact, drawn by a process of probable reasoning, in the absence of actual certainty of its truth or falsity or until such certainty can be ascertained." 22 Am. & Eng. Encyc. of Law (2d Ed.) 1234. If the evidence is of such a character as to overcome the inference that such services were gratuitous, then the claimant is in the same situation as if such services had been rendered to a stranger. This proposition was thoroughly considered in Davis v. Gallagher, 55 Hun, 593, 9 N. Y. Supp. 11, where Judge Martin says:

"We do not think it was necessary, to entitle the claimant to recover, that he should prove an express and definite contract, but that, in the absence of such an agreement, it was incumbent upon him to prove such facts and circumstances as would show an understanding or expectation on the part of the decedent to pay, and of the plaintiff to receive, the value of such services and property. * * * The decedent at various times stated that which was to the effect that he was indebted to the plaintiff for his work, and tended to show that it was intended by both parties that he should be paid therefor."

See, also, Markey v. Brewster, 10 Hun, 16, affirmed in 70 N. Y. 607; Robinson v. Raynor, 28 N. Y. 494; Marion v. Farnan, 68 Hun, 383, 22 N. Y. Supp. 946; Green v. Roberts, 47 Barb. 521.

The evidence relied upon to overcome the presumption of gratuitous services in this case consists almost entirely of the declarations of the testatrix. It has been said that it is always unsatisfactory to maintain a liability upon proofs of declarations only. That evidence to establish a fact by the admissions of the party should always be carefully scrutinized, and received with caution. Law v. Merrills, 6 Wend. 268. While fully recognizing the force of this criticism, the proof of the admissions of the testatrix in this case is too overwhelming and satisfactory to be disregarded. A slight reference to the record will establish this proposition. In August, 1902, testatrix stated to the husband of the plaintiff that "she was sorry that Carrie had to do the work at that time, and that she would pay her for it." The claimant was present at this conversation. The attending physician, Dr. Sharp, testified that the testatrix had talked with him on several occasions with reference to the services that claimant had performed for her. "She made the remark that Carrie should be well paid for all the work that she had done." The doctor testified that the testatrix had made substantially the same remark to him upon various occasions. The husband, George Burlison, further testified that in the month of April, 1901, he had conversation with the testatrix in reference to the claimant's work. He says:

"She [the testatrix] sent for me. She was too sick to get out. She knew we were about to be married, and asked if we would just as soon be married any time that she might state. I told her yes; it made no difference to me. She was afraid that she was not going to live, and did not want to leave Carrie alone. She said that Carrie had worked hard there, and done all kinds of work; that she had worked hard; and that she would see that she should have her pay."

Again, in the fall of the same year, this witness testified that the testatrix said that "Carrie had done the work there, and she should see that she had her pay. She said she didn't know what she would

have done, but for her." This conversation was in the hearing of the claimant.

In April or May, 1901, the testatrix stated to Arthur Powell, who was a neighbor and an adviser of the testatrix, as follows:

"She said she was glad I had come in. She wished to see me. Said there was a little matter she wished to tell me. That in a certain drawer (pointing to it) in her dresser was a certificate of deposit of $1,000, which she had signed. She was afraid she might not live. In case she did not, she wished me to give that to Carrie. She told me where I would find the key to get into the drawer. She said Carrie had worked very hard. It was along about the time she was sick with blood poisoning. I would say, the way that she spoke, she wanted Carrie to have that for her services."

This witness further testified that, a few days before the death of the testatrix, she said to him "that she felt better that morning; that she was in hopes to recover sufficiently to go to Arcade, and change that will a little, and give Carrie more, as she ought to have pay for her services."

Dr. Follett testified:

"I have observed Carrie raking hay and pitching grain and working about the barn. I have observed her washing, churning, and sweeping. She [the testatrix] said while she was sick Carrie was very kind to her in taking care of her. She said she would see that she was well paid, for she would not lose anything by it."

This reference to the evidence, showing the frequently repeated statements of the testatrix of an intention on her part to pay the claimant well for the services rendered by her, in connection with the fact that some of these declarations were made to or in the presence of the claimant, conclusively shows, that it was the expectation of both the testatrix and of the claimant that the claimant should receive a reasonable compensation for the services rendered by her.

In relation to the objection that the provision of the will in favor of the claimant should be regarded as full payment of her claim, if the evidence failed to disclose any conditions rendering the claimant a reasonable subject of the testatrix's bounty, then the devise to her of the life estate in the farm might with some force be urged as a payment of the testatrix's indebtedness to the claimant. But it will be remembered that the testatrix had no relatives. Aside from the claimant, she was alone in the world. No one else had any claim upon her bounty. There was, however, existing between her and the claimant the regard and solicitude incident to the relationship of parent and child. They had always resided together from the early infancy of the claimant. They had each striven for the comfort and welfare of the other. There were the same reasons existing why the claimant might expect to participate in the testamentary benefactions of the testatrix as usually exist between parent and child. Under such circumstances, it would be a strained and unreasonable conclusion to hold that the beneficial provisions of the will in favor of the claimant were prompted solely by a desire on the part of the testatrix of liquidating an arbitrary indebtedness.

The law seems well settled that a bequest or devise to a creditor is not to be regarded as payment of an indebtedness, unless the will expressly declares, or the surrounding circumstances clearly indicate such an intent on the part of the testatrix. A devise is a gift of real

property by a last will and testament. 4 Kent, Comm. 501, and note; 2 Black. Comm. 373; Bouvier, Law Dict. 474. A legacy implies a bounty, and not a payment. Reynolds v. Robinson, 82 N. Y. 103, 107, 37 Am. Rep. 555; Eaton v. Benton, 2 Hill, 576. A legacy to a creditor is not to be deemed in satisfaction of his debt, unless intended by the testatrix that it should so operate. Sheldon v. Sheldon, 133 N. Y. 1, 4, 30 N. E. 730; Clarke v. Bogardus, 12 Wend. 68; Boughton v. Flint, 74 N. Y. 484; Phillips v. McCombs, 53 N. Y. 494; Eaton v. Benton, supra; Williams v. Crary, 4 Wend. 449. A direction in a will to pay all debts negatives the inference that a bequest to a creditor was intended as payment. Fort v. Gooding, 9 Barb. 371.

The claimant was married June 12, 1901. Such services as she rendered for the testatrix after that date were so rendered while she was residing with her husband. Chapter 289, p. 844, of the Laws of 1902, amends the domestic relations law, regarding the rights of married women. This act provides that a married woman shall have a cause of action in her own and separate right for all wages or other remuneration for which she may render work, and that her husband shall have no right of action therefor unless he, with her knowledge and consent, has otherwise expressly agreed with the person obligated to pay such remuneration, and that the presumption of law in all such cases shall be that such married woman is alone entitled thereto, unless the contrary expressly appears. Section 2 (page 845) of this act, however, is as follows: "The foregoing section shall not affect any right, cause of action or defense existing before the date when this act shall take effect." This act became a law April 2, 1902. Hence it is apparent that the claimant's right to recover for such services as she performed from the time of her marriage, June 1, 1901, to the passage of this act, cannot be predicated upon the provision of this statute. The evidence, however, clearly shows a distinct understanding between the claimant and her husband that whatever she had earned or might earn through her employment with the testatrix should belong to her, and not to the husband. The husband can forego his right to his wife's earnings, and, unless done in fraud of creditors, the property she acquires with his knowledge and consent, whether within or outside the household, may vest in her. Carver v. Wagner, 51 App. Div. 47, 50, 64 N. Y. Supp. 747; Stokes v. Pease, 79 Hun, 304, 29 N. Y. Supp. 430; Sands v. Sparling, 82 Hun, 401, 31 N. Y. Supp. 251; Lashaw v. Croissant, 88 Hun, 206, 34 N. Y. Supp. 667; Birbeck v. Ackroyd, 74 N. Y. 356, 30 Am. Rep. 304; Reynolds v. Robinson, supra; Brooks v. Schwerin, 54 N. Y. 348; Blaechinska v. Howard Mission, 130 N. Y. 497, 29 N. E. 755, 15 L. R. A. 215.

The husband was called as a witness for the claimant, and he testified that he made no claim for these services, and that there was an agreement between him and his wife that the compensation for such services was to be her property, and that he had no claim upon or title to it. This being the case, he would be clearly estopped from making any claim on his own account to recover for such services.

In view of the facts and authorities referred to, I am clearly of the opinion that the claimant is entitled to recover what her services were

fairly and reasonably worth. The evidence regarding the value of such services is somewhat voluminous, and, from a careful analysis of the same, I conclude that the claimant is entitled to recover against the estate the sum of $632; and the decree to be entered judicially settling this estate will provide for the payment of that amount to her. The form of the decree and the allowances and expenses of this accounting will be adjusted before me at my office in Salamanca on the 13th day of June, 1904.

Decreed accordingly.