[No. 14620.   Department One.   May 9, 1918.]

# O. C. OLSEN, *Appellant*, v. WILLIAM H. HAGAN *et al.*, as *Executors etc., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—CLAIMS—CONTRACT FOR SERVICES —EVIDENCE—SUFFICIENCY. A decedent's promise to pay a foster son for past services is supported by a sufficient consideration, where she had promised her dying husband to make the payment, she had taken her husband's separate and community estate burdened with the promise, and there was a moral obligation on her part to carry it out.

SAME—CLAIMS—WAIVER. The surrender of notes to a decedent in her lifetime does not constitute a waiver of a claim against the estate, where no equivalent was given and the payee was justified in assuming that decedent would subsequently provide for the indebtedness by will or otherwise.

WILLS—CONSTRUCTION—PAYMENT OF DEBT BY LEGACY—PRESUMPTION. There is no presumption that a bequest is in payment of a debt due the legatee, especially where it was less than the debt; and even though the creditor was named as a residuary legatee, where the residuum is uncertain in amount or time of payment.

EXECUTORS AND ADMINISTRATORS—CLAIMS — JOINDER — NECESSITY. The presentation of a claim for moneys expended does not bar the filing, within the time limited by law, of another claim for services rendered, where the two claims were upon separate accounts for different subject-matters; since they need not be joined.

ASSIGNMENTS—RIGHT TO SUE—REAL PARTY IN INTEREST. Under Rem. Code, § 191, providing that an assignee may maintain an action notwithstanding the assignor may have an interest in the thing assigned, an assignee of a chose in action for the purpose of collection only may maintain an action in his own name as the real party in interest.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 23, 1917, upon findings in favor of the defendants, in an action to enforce a claim against an estate, tried to the court. Reversed.

*F. E. Langford* and *Lucius G. Nash,* for appellant.

*Peacock & Ludden,* for respondents.

[1]Reported in 172 Pac. 1173.

FULLERTON, J.—Marion C. Wharton died on June 15, 1915, leaving a last will in which the respondents were named as executors. One of the executors, Thomas C. Hooker, presented a claim against the estate in the sum of $16,670 for work, labor and services performed for the testatrix from April, 1890, to June 15, 1915. The claim was rejected by the majority of the executors, whereupon Hooker brought an action to enforce it. This action was dismissed on the ground that Hooker could not sue himself as representative of the estate. He thereupon assigned the claim to the appellant, Olsen, who brought this action as assignee. On a trial to the court, findings and conclusions were made in favor of respondents, and judgment rendered dismissing the action. The appellant assigns a number of errors, which are discussed under general heads, a plan which will be followed by us in the consideration here.

The first contention of appellant is that there was undisputed evidence of an express contract by the decedent to pay Hooker for his services. The evidence shows that Thomas C. Hooker, when a child of ten years of age, was taken into the home of Samuel and Marion C. Wharton and always resided with them. He was never legally adopted, but was always treated as a member of the family, and in his character of foster son proved more dutiful, considerate, and serviceable to his foster parents than many a natural child. For the years for which recovery is sought, Hooker undoubtedly rendered valuable services in the household and minor business affairs of the Whartons. That such services were appreciated and deemed worthy of remuneration appears from the fact that Samuel Wharton, on his deathbed in 1908, requested his wife Marion to provide for Hooker to the extent of $10,000. This she undertook to do in wills made by her in 1909

and 1911, in each of which she bequeathed him that
sum. Both of these wills had been revoked, but in 1913,
just prior to undergoing a surgical operation, she gave
him her three promissory notes aggregating that sum,
due in one, two, and three years. On her return home
after successfully withstanding the operation, she had
Hooker return these notes to her. In her last will and
testament, executed in May, 1915, about a month prior
to her death, she devised to Hooker a life estate in her
summer resort property at Spirit Lake, Idaho, with all
the personal property and effects used in conjunction
with such property. There was a limitation attached,
however, that, in case he married a certain woman,
such bequest was to be void and he was to have in lieu
thereof the sum of $5,000, but if he married any other
woman and had a child or children by her, such issue
was to take the fee in perpetuity. In addition to be-
queathing to Hooker a quantity of personal property,
he was also named as one of the residuary legatees of
the estate. There is no showing as to the full value of
the estate and what would be the possible value of such
residuary interest, but it appears that the property
directly passed to Hooker, assuming that his children
took title to the Spirit Lake property, would be some-
thing in excess of $10,000 at the lowest valuation.

There is no proof of an express contract by Mrs.
Wharton to pay Hooker for his services, other than
her statement to him, at the time of delivering the
notes for $10,000, that it was in accordance with a
promise to her husband to compensate him for his past
services; nor is there anything in the evidence show-
ing an implied contract by Mrs. Wharton to remuner-
ate Hooker upon which an action of *quantum meruit*
could be based. But a promise to pay Hooker a definite
sum for past services during the lifetime of Mr. Whar-
ton was established, we think, by a clear preponder-

ance of the evidence. Not only were notes to evidence the debt executed and delivered, but there was a promise on her part to make good her husband's request. The subsequent surrender of the notes by Hooker cannot be deemed a waiver or relinquishment of that promise, since it was upon her request and explanation that it worried her to have the notes outstanding and subject to negotiation. There was no evidence of any promise by Mrs. Wharton at this time to give any equivalent for the surrendered notes, but the relations of the parties justified Hooker in assuming that Mrs. Wharton would subsequently provide for that indebtedness by will or otherwise. This she failed to do, as no mention of such liability occurs in her last will, although prior wills had expressly named a legacy in the amount represented by the promise to her husband. Her bequests to Hooker were the natural ones that a person in her situation would make to one occupying the close relation that he did to her, and were due to him rather for personal service to her than as a carrying out of Mr. Wharton's request. Whether it was an oversight that provision for $10,000 was omitted, or whether the testatrix had in mind that the bequests as made by her were to cover all obligations to Hooker for his long and faithful service as a member of the family, it is impossible to tell, but it certainly does not appear upon the face of the will that provision was therein made for carrying out her promise to her husband and to Hooker wherein a cash payment of $10,-000 was agreed to be made. An earlier will in 1911 gave Hooker not only $10,000, but also the Spirit Lake property. Her promise to her dying husband in 1908 to pay the sum named to Hooker, even if one incapable of enforcement by Hooker, was a moral obligation on her part to carry out. Such obligation constituted a consideration for her promise to Hooker to give him

that sum. It was not a promise to answer for the debt of another, since, if a debt at all, it was a community debt. She took her husband's estate burdened with her promise to make provision therefrom for Hooker.

The evidence is convincing that Mrs. Wharton, as a member of the community, promised her husband, prior to his death, to give Hooker $10,000. This promise was consummated by her gift to Hooker of notes for that sum. She thereby recognized the promise as an obligation on the part of her deceased husband and herself. Her agreement to give Hooker such sum was a direct promise upon which he was entitled to rely, and constituted an existing debt on her part, notwithstanding the surrender of the evidences of the debt, since there is no evidence of the intent of either party to treat it as a waiver or cancellation of the debt. While there was no promise shown at this time to take care of Hooker to that extent in the will, he had a right to rely upon such provision, as she had often indicated, both to himself and to others, her intent to amply care for him. We think this promise of Mrs. Wharton to pay Hooker $10,000 unquestionably, under the circumstances, constituted a debt for which she was liable. While it is true the will of Mrs. Wharton is apparently liberal in its bequests to Hooker, it nowhere appears in its provisions that such bequests are designed as satisfaction for any claims he has against the estate. The will itself provides for the payment of all debts, and in such a case, if a legatee were in fact a valid creditor, no presumption necessarily arises that the bequest was given in payment of the debt, but the intent must appear that the legacy is in satisfaction. *Glover v. Patten*, 165 U. S. 394; *In re Dailey's Estate*, 43 Misc. Rep. 552, 89 N. Y. Supp. 538.

Such presumption could not be indulged where the amount of the legacy is less than the alleged indebted-

ness, nor would the presumption be aided by the fact that the creditor was named as a residuary legatee, where the residuum is uncertain in amount or time of payment. *In re Sherman,* 24 Misc. Rep. 65, 53 N. Y. Supp. 376.

The court found that the services performed by Hooker up to the year 1908, or the death of Mr. Wharton, were rendered to the community and would not constitute a personal liability on the part of Marion C. Wharton. It fails to make any finding as to her liability subsequent to that year. The evidence shows that the Whartons owned their respective properties in severalty, and that much of the services rendered by Hooker from 1892 onward were rendered in and about the separate property of Mrs. Wharton, and that his other services prior to 1908 were largely in connection with family affairs, falling within necessary family expenses. However, after the year 1908, his services were solely in the interest of Mrs. Wharton for a period of over seven years, for which period his itemized claim amounts to $7,850. But in our view of the facts, as we have indicated above, the question of whether the services rendered up to the year 1908 were for the community, and hence not a separate liability of Mrs. Wharton, becomes immaterial in so far as the liability for the sum of $10,000 is concerned. Any other contract, either express or implied, for payment to Hooker for his services was not satisfactorily established.

The respondents raised the objection that, inasmuch as Hooker had presented a claim against the estate for $1,055.06 for moneys expended by him, which had been allowed, he should have incorporated and presented at the same time the claim now in suit for $16,670 for the value of his services. The latter claim was not presented until the lapse of ten months following the

prior presentation, but was within the year succeeding the first publication of notice to creditors. The two claims were upon separate accounts for different subject-matters, and there was no necessity for their joinder in presentation against the estate. *Gedney v. Gedney,* 19 App. Div. 407, 46 N. Y. Supp. 590 (affirmed in 160 N. Y. 471, 55 N. E. 1).

The respondents also object that appellant could not maintain this action for the reason that the assignment to him was only colorable and that Hooker was the real party in interest. Our statute (Rem. Code, § 191) provides that an assignee may maintain an action "notwithstanding the assignor may have an interest in the thing assigned." As said in *State ex rel. Adjustment Co. v. Superior Court,* 67 Wash. 355, 121 Pac. 847, "this court has uniformly held that an assignee of an account or chose in action could maintain a suit in his own name, although such an assignment is made for the purpose of collection only, and the assignee had no other interest in the thing assigned."

It is our conclusion from the record that the decedent, Mrs. Wharton, obligated herself to make payment to the appellant's assignor in the sum of $10,000. This she did not do in her lifetime nor by her will. We think no other contract obligation on her part to remunerate Hooker was established.

The judgment of the trial court will be reversed, with instructions to render judgment in favor of appellant in the sum of $10,000.

ELLIS, C. J., WEBSTER, MAIN, and PARKER, JJ., concur.