[No. 16550.  Department One.  January 20, 1922.]

LEAVENWORTH STATE BANK, *Respondent and Cross-Appellant*, v. WENATCHEE VALLEY FRUIT EXCHANGE, *Appellant*, S. & G. FRUIT COMPANY, *Appellant*, PESHASTIN MILL COMPANY, *Cross-Appellant*.[1]

ASSIGNMENTS (20)—OPERATION AND EFFECT—RIGHTS TRANSFERRED —RECOVERY OF FULL AMOUNT.  Where a manufacturer on shipping goods to a purchaser assigns the invoice therefor to a bank for borrowed money less in amount than the face of the invoice, the bank thereby acquires a right of action against the purchaser for the full amount of the invoice price, under Rem. Code, § 191, notwithstanding the assignor may have an interest in the thing assigned.

SALES (72)—PERFORMANCE OF CONTRACT—QUANTITY—EXCESS DELIVERY.  Where a fruit company, after contracting in writing with a mill company for a quantity of pear boxes, orally arranges that a portion of the boxes should be shipped to another fruit company, the former company would not be liable for any excess of boxes over the contract quantity delivered without its knowledge to the latter company.

INTERPLEADER (5)—JUDGMENT.  One who is not an original defendant cannot complain that judgment is rendered against him, where he voluntarily intervenes in the action, makes a defense, and seeks affirmative relief against the plaintiff.

SALES (72) — PERFORMANCE OF CONTRACT—QUANTITY—EFFECT OF EXCESS DELIVERY.  Where, under a written contract between a mill company and a fruit company, 15,000 pear boxes were to be delivered at a stated price, and by subsequent oral agreement a car load of the boxes was to be shipped to another fruit company without any stipulation as to price, the latter company would be liable for the prevailing market price at time of delivery on such quantity of boxes as were in excess of the 15,000 called for by the written contract between the original parties.

Cross-appeals from a judgment of the superior court for Chelan county, Grimshaw, J., entered October 8, 1920, upon findings in an action for damages for breach

[1]Reported in 204 Pac. 8.

of contract, tried to the court. Affirmed as to defendant's appeal; reversed as to plaintiff's cross-appeal.

*Hughes & Wallace,* for appellants.

*Herman Howe* and *Corbin & Easton,* for respondents and cross-appellants.

BRIDGES, J.—This action grows out of a written contract between the Peshastin Mill Company, as the seller, and Wenatchee Valley Fruit Exchange, a corporation, as the purchaser. In many respects this is a companion case with that of *Leavenworth State Bank v. Cashmere Apple Co., ante* p. 356, 204 Pac. 5. The contract here is substantially the same as the one involved in that case, except as to the amount of the boxes. In this contract the seller agreed to sell and the purchaser agreed to purchase "40,000 apple boxes, now manufactured and in stock at Leavenworth, Washington", and "200,000 apple boxes to be manufactured", according to certain specifications, and "15,000 pear boxes to be manufactured" according to certain specifications, and certain other kinds of boxes which this action does not particularly concern. The purchaser paid $1,000 down on the purchase price. Further provisions will be found in the contract shown in the *Cashmere Apple Company* case, *supra.*

Apparently all of the 40,000 lot of apple boxes "now manufactured and in stock at Leavenworth" were delivered; but a large amount of the lot of 200,000 apple boxes "to be manufactured" were never delivered. It appears that there were eight different carloads of boxes shipped out in the name of the Wenatchee Valley Fruit Exchange, some of which were delivered to that company, and some to the S. & G. Fruit Company. The sixth carload, which was of pear boxes and which is the basis of plaintiff's sixth cause of action, and in

part the basis of a cross-appeal by the plaintiff, was delivered to the S. & G. Fruit Company.

The situation of the various parties to the action is somewhat confusing, and we think it advisable to say a few words with reference thereto. The Peshastin Mill Company, which was the seller in the contract, assigned its claim against the Wenatchee Valley Fruit Exchange for all of the eight carloads of boxes shipped, to the Leavenworth State Bank, which originally brought this action against the Fruit Exchange, as the sole defendant. In a general way, that defendant's answer denied any liability to the bank. At this stage of the proceedings, the S. & G. Company intervened and joined with the original defendant, Wenatchee Valley Fruit Exchange, in what they designate as,

"an affirmative defense, and by way of counter-claim and set-off against each of the several causes of action set up in the plaintiff's complaint, and as a cross-complaint against the Peshastin Mill Company, a corporation, and the Leavenworth Box Company, a corporation, and joined therewith and made a part thereof the complaint in intervention of the S. & G. Fruit Company, a corporation."

These joint pleaders, in substance, admitted that they had received the various boxes sued for, and alleged that the bank and the Peshastin Mill Company and the Leavenworth Box Company had breached the contract hereinbefore mentioned, in that they had failed to ship a large portion of the 200,000 lot of apple boxes, and sought set-offs and damages in a sum in excess of $15,000.

The total amount sued for by the plaintiff was $7,533, less certain freights which had been paid by the companies receiving the shipments. The court gave the bank judgment for $6,012.78, together with

interest, and refused any relief to the Wenatchee Valley Fruit Exchange and the S. & G. Fruit Company on their cross-complaint and counterclaim. The companies last named have appealed from that part of the judgment refusing them damages on their counterclaim, and the bank has cross-appealed on the ground that its judgment should have been for a larger sum.

In discussing the original appeal, we will refer to the Wenatchee Valley Fruit Exchange and the S. & G. Company as appellants, and the other parties as respondents; and in discussing the cross-appeal, we will refer to the bank and the Peshastin Mill Company as cross-appellants, and all of the other parties as cross-respondents.

We will first discuss the original appeal.

The respondents have at all times admitted they failed to deliver a large portion of the 200,000 lot of apple boxes and as an excuse therefor alleged, and undertook to prove, as was done in the *Cashmere Apple Company* case, *supra,* that under the terms of the contract all of those boxes were to be manufactured by the Peshastin Mill Company at its lumber and box factory, located near Blewett, Washington, and that, after it had manufactured and delivered a portion of such boxes, and on, to wit, the 13th day of August, 1919, its entire mill was destroyed by fire, thus making it impossible for it to comply with its contract; and that, under the provisions of that instrument with reference to fires, strikes, etc., they were relieved of further duty in that regard. The appellants, however, contend that the contract was one of bargain and sale and not manufacture and sale, and that the destruction of the mill did not relieve the respondent from furnishing the whole of the boxes provided for in the contract.

The legal questions involved here, in so far as the original appeal is concerned, are substantially the

same as those involved in the original appeal in the *Cashmere Apple Company* case, *supra,* and what was said there with reference to the original appeal is applicable here, and we do not consider it necessary to make any further discussion of the question. The conclusion reached in the *Apple Company* case, *supra,* was to affirm the judgment to the effect that the appellants were not entitled to recover anything on their counterclaim and cross-complaint. For the reasons there given we come to the same conclusion here.

We will now consider the cross-appeal.

Two distinct questions are involved therein. The first one is based upon the following facts: The testimony shows, and the trial court found, that, as the Peshastin Mill Company loaded and shipped out each carload of boxes, it borrowed from the bank eighty-five per cent of the amount of the value of each invoice, and at that time gave to the bank its promissory note for the amount so obtained, and delivered to the bank, as collateral security, the invoice. Each one of these invoices was assigned to the bank in the following words: "For value received this account has been assigned to the Leavenworth State Bank, Leavenworth, Washington. Please remit to them when due." The trial court refused to give the bank judgment for any amount more than it advanced on the invoices, to wit, eighty-five per cent thereof, and it has cross-appealed because the court refused judgment for the full amount of the invoices, less proper set-offs or counterclaims. The cross-respondents concede that an assignee of an account may recover the whole amount assigned, less proper offsets, even though there was no consideration for the assignment, and the assignee is in law bound to account to the assignor; but contend that, where the assignment is

made only for security, the recovery is limited to the amount of the debt which was secured. On the other hand, the cross-appellant argues that the fact that the assignment was made as security can make no difference so long as the whole amount has been assigned.

Section 191, Rem. Code (P. C. § 8272), provides that any assignee of any book account or chose in action for the payment of money and by assignment in writing, may by virtue of such assignment:

"—sue and maintain an action or actions in his or her name, against the obligor or obligors, debtor or debtors, therein named, notwithstanding the assignor may have an interest in the thing assigned: Provided, that any debtor may plead in defense a counterclaim or an offset, if held by him against the original owner, against the debt assigned, save that no counterclaim or offset shall be pleaded against negotiable paper assigned before due, and where the holder thereof has purchased the same in good faith and for value, and is the owner of all interest therein."

This question is not a new one in this court. In the case of *Von Tobel v. Stetson & Post Mill Co.*, 32 Wash. 683, 73 Pac. 788, we said:

"While Hochbrunn was on the stand he testified that the claim sued upon had been assigned to the respondent as security for a debt, and that the debt had been fully paid prior to the trial. The assignment was in writing, and there had been no reassignment of the claim from the respondent to Hochbrunn. The appellant contends that the payment of the debt itself operated as a reassignment of the claim, and hence the respondent was not the real party in interest."

The court then proceeded to show that the mere fact that the debt was paid did not amount to a reassignment of the claim, and further said:

"So here, notwithstanding the respondent may have held the claim at the time of the trial by a mere naked

legal title, we think he had such an interest as would entitle him to maintain this action in his own name.''

To the same effect are *McDaniel v. Pressler,* 3 Wash. 636, 29 Pac. 209; *Riddell v. Prichard,* 12 Wash. 601, 41 Pac. 905; *State ex rel. Adjustment Co. v. Superior Court,* 67 Wash. 355, 121 Pac. 847; *Yamamoto v. Puget Sound Lumber Co.,* 84 Wash. 411, 146 Pac. 861; *Olsen v. Hagan,* 102 Wash. 321, 172 Pac. 1173.

In vol. 2 R. C. L., p. 640, the rule is laid down as follows:

"It is sometimes provided by statute that every action must be prosecuted in the name of the real party in interest, and under such statutes it is generally held that an assignment absolute in its terms, and vesting in the assignee the apparent legal title to a chose in action, is considered as being unaffected by a collateral contemporaneous agreement respecting the proceeds, and the assignee may sue in his own name as the real party in interest, even though the entire consideration for the assignment is made to depend on the contingency of collection, or the assignee is to account to the assignor for the proceeds when collected. In the majority of jurisdictions it is no defense to an action on commercial paper that the plaintiff may be holding it without consideration or subject to equities between him and the assignor.''

In the case of *Manley v. Park,* 68 Kan. 400, 75 Pac. 557, 66 L. R. A. 967, the court, addressing itself to this subject, said:

"The original owner is still the person to be finally benefited by the litigation, but his legal demand is no longer against the maker of the note, but against the person to whom he has assigned it. When the obligor is sued by such assignee (no claim as innocent purchaser being involved), he can make any defense he could have made against the assignor; he is fully protected against another action; and in no way is it a matter of the slightest concern to him what arrange-

ment between the plaintiff and the original creditor occasioned the assignment. This being true, it would be a sacrifice of substance to form to permit the defendant to defeat the action by showing a failure of consideration for the transfer, or that the plaintiff was bound to account to his assignor for a part or all of the proceeds.''

In this case the assignment of the whole of each invoice was made to the bank, and if the bank be paid the full amount, certainly the debtor could not thereafter be called upon by the assignor to pay any portion of the debt. If the debtor is protected in his payment to the assignee, it can be no concern of his that the assignee must account to the assignor for a part or the whole amount so collected.

It is our conclusion that the plaintiff had a right to recover the whole amount of the assignments less any just offset or counterclaim.

The second division of the cross-appeal is upon the following facts: The contract provided for 15,000 pear boxes at $14.50 per hundred. The sixth cause of action was for $1,440 on a shipment in one car of 8,000 pear boxes at the market price of $18 per hundred, instead of $14.50 per hundred, as provided in the contract. It also appears that previous to that shipment all but 3,800 of the 15,000 pear boxes provided by the contract had been shipped and the shipment of the 8,000 pear boxes was in excess of the contract number by 4,200 boxes, and the court refused to give judgment against either of the cross-respondents on account of that excess, although it appears to be admitted that the excess was received and retained by the S. & G. Fruit Company.

The cross-appellants contend that they are entitled to judgment against either or both of the appellants on such excess boxes, at the market price at the time of

the shipment, which it appears was $18 per hundred. We are satisfied that the Wenatchee Valley Fruit Exchange, at the time of making the contract, or thereafter, orally arranged with the Peshastin Mill Company that parts of the boxes contracted for should be shipped directly to the S. & G. Fruit Company, but we find nothing in the testimony which indicates that the Valley Fruit Exchange ordered any excess pear boxes shipped, nor did it know that any such excess had been shipped and delivered to its co-cross-respondent. Under these circumstances, we do not see how the Exchange could be made liable for such excess of boxes at any price, and the court was right in refusing to give judgment against it on account of such excess boxes.

But the testimony seems to indicate that there was some verbal arrangement between the Peshastin Mill Company and the S. & G. Fruit Company, whereby the former was to ship to the latter this full carload of pear boxes. Since the Peshastin Mill Company actually shipped this excess of pear boxes, and the S. & G. Fruit Company actually received and used them, it would seem that the latter ought to pay for them. It certainly cannot receive the boxes and use them without making compensation. The court refused, however, to give any judgment against it. In its brief in answer to the cross-appeal, it admits that these extra boxes "were delivered under an oral contract between the Peshastin Mill Company and the S. & G. Fruit Company" and "that the arrangement for the shipment . . . was made with Mr. Griner, one of the officers of the S. & G. Fruit Company." But it contends that no judgment can be rendered against it in this action because the bank did not sue it, and because it was not in the action in such a way as that judgment

could be rendered against it. We are of the opinion that the court erred in this regard. It is true the S. & G. Company was not an original defendant, but it voluntarily intervened, made a defense and sought affirmative relief against the bank and the Peshastin Mill Company. All of the parties were before the court, and it would seem a useless procedure to deny the plaintiff recovery in this case and force it to an independent action. The court should have entered judgment against the S. & G. Fruit Company on account of the excess.

The question then arises whether such boxes should be paid for at the contract price of $14.50 or $18 per hundred, the market price at the time of delivery. It is clear to us that these excess boxes were not, and could not have been, shipped and delivered under the contract. About the only testimony on this feature of the case is that of one of cross-appellant's witnesses to the effect that it was agreed that the shipment should be made at the market price. It would therefore appear that there was an independent oral arrangement between the S. & G. Fruit Company and the Peshastin Mill Company concerning these excess boxes, and that such arrangement was entirely aside from the written contract. We conclude, therefore, that the bank was entitled to judgment against the S. & G. Fruit Company on account of the 4,200 excess boxes at $18 per hundred, or a total of $756 and interest.

The judgment in so far as it is affected by the original appeal is affirmed. In so far as it is affected by the cross-appeal it is reversed, with directions to enter judgment in favor of the bank and against the Wenatchee Valley Fruit Exchange in accordance with this opinion, and also a judgment against the S. & G.

Fruit Company and in favor of the bank on account of the excess pear boxes at the price of $18 per hundred.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.