[No. 8768. Department Two. August 17, 1910.]

JONES-THOMPSON INVESTMENT COMPANY, *Appellant*, v. CASCADE STEEL FOUNDRY COMPANY, *Respondent*.[1]

CORPORATIONS— STOCK — SUBSCRIPTION—FRAUD—EVIDENCE—SUFFI-CIENCY. The evidence is insufficient to show fraud in securing a subscription to the stock of a corporation to be paid for by the conveyance of land, upon representations that all the stock was subscribed and that a plant for the manufacture of steel castings would be constructed on the land, where it merely appears that the work of constructing the steel plant was suspended on account of a financial depression and not abandoned, and all the stock was subscribed, although part of the subscribers were probably not financially responsible, there being however no such want of ability to pay and knowledge by the corporation as to support a charge of fraud in procuring the subscriptions; especially where the plaintiff consummated the land deal by a deed without conditions after suspension of the work of construction of the plant.

DEEDS—FORFEITURE—BREACH OF CONDITIONS—MERGER OF PRELIMI-NARY MATTERS. There can be no forfeiture of land conveyed by absolute deed without conditions, pursuant to a contract to erect there-

[1]Reported in 110 Pac. 417.

on a manufacturing plant, where the only condition precedent to the making of the conveyance was the expenditure of $5,000 in preparing the ground, which was fulfilled, and the contract fixed no time for the completion of the plant, the construction of which had simply been suspended and not abandoned; since the preliminary matters were merged in the deed, which could not be set aside for breach of condition not expressed in it.

Appeal from a judgment of the superior court for King county, Main, J., entered November 6, 1909, upon findings in favor of the defendant, in an action for rescission on the ground of fraud. Affirmed.

*Douglas, Lane & Douglas,* for appellant.

*Kerr & McCord,* for respondent.

PARKER, J.—This action was commenced by the plaintiff to procure the cancellation of a subscription made by it to the capital stock of the defendant, upon the organization of that corporation, and to set aside a conveyance of land made by plaintiff to defendant in payment of the stock subscribed for. A trial before the court resulted in a judgment denying the relief prayed for by the plaintiff and a dismissal of the action, from which it has appealed to this court.

Articles of incorporation were executed, and filed in the office of the secretary of state and in the office of the auditor of King county, early in August, 1907, creating the respondent a corporation under the laws of this state. About the same time, all of the capital stock of the respondent was subscribed for, in the total sum of $200,000, the appellant subscribing for $6,000 thereof, by a writing as follows:

"The undersigned, Jones-Thompson Investment Company, a domestic corporation, hereby subscribes for six thousand shares of the pár value of one dollar each, and of the total par value of six thousand dollars, of the capital stock of the Cascade Steel Foundry Company, a corporation organized under the laws of the state of Washington, with a total capital stock of two hundred thousand dollars divided into two hundred thousand shares of the par value of one dollar each.

"The undersigned corporation agrees to pay the amount of said subscription, however, only by the execution and delivery to the Cascade Steel Foundry Company of a good and sufficient warranty deed for a tract of ten acres situated in section 18, township 23, north, range 5, east, King county, Washington, more particularly described in that certain contract of even date between the parties, and it is understood that this subscription is a part of said agreement, which would not have been made had this subscription not been executed.

"The undersigned agrees to accept the shares of stock hereby subscribed in payment of the sum of six thousand dollars, required by paragraph 2 of said contract, but said stock shall be fully paid and non-assessable, and shall be so issued by the corporation in payment for the ten acres of land described in said contract, and will be accepted by the undersigned corporation in full payment for said land.

"No obligation shall attach to this subscription, however, unless the said Cascade Steel Foundry Company shall first proceed to construct on said property a plant for the manufacture of steel casting as provided in said contract, and shall expend the sum of five thousand dollars upon said ground in labor and improvements preparatory to the construction of said plant.

"Dated at Seattle, Washington, this 10th day of August, 1907. Jones-Thompson Investment Company, By Fred R. Thompson, President.

"Attest: A. A. Jones, Secretary."

At the same time the parties entered into a contract for the payment of the stock subscribed for by appellant, the provisions of which contract, so far as material to this controversy, are as follows:

"This contract, made at Seattle, Washington, this 10th day of August, A. D. 1907, between Jones-Thompson Investment Company, a domestic corporation, as first party, and Cascade Steel Foundry Company, a domestic corporation, as second party,

"Witnesseth: That in consideration of the premises, and of the sum of one thousand dollars now paid to the first party by the second party and hereby acknowledged, the parties hereto agree with each other as follows:

"(1) The first party agrees to sell and convey to the second party, who agrees to purchase from first party upon the following terms and conditions, a tract of ten acres, situated . . . (Here follows description of land.)

"(2) The purchase price is the sum of six hundred dollars per acre, or the total sum of six thousand dollars, and it is understood that the second party will erect on said premises a plant for the manufacture of steel castings, which will employ one hundred men or more, and whenever the second party shall have made improvements of the value of five thousand dollars in the grading and preparation of such tract and the construction of foundations, building, etc., which must be on or before November 1st, 1907, and shall then tender to the first party the purchase price, the first party will make, execute, acknowledge and deliver to second party its good and sufficient warranty deed conveying without special covenants all the tract first herein described free from all incumbrances."

Then follows provisions in the nature of an option to purchase another tract, with which we are not concerned. Thereafter respondent made improvements upon the land of the value of more than $5,000 by grading, construction of foundations, etc., entitling it to a deed under the terms of the contract, upon payment of the purchase price. Thereafter, about November 27, 1907, respondent caused to be issued and delivered to appellant a certificate in usual form, for $6,000 of the capital stock of respondent; and thereafter, on December 9, 1907, appellant executed and delivered to respondent a deed for the land, in compliance with the terms of the stock subscription and land contracts. This deed was absolute in form, without any conditions or restrictions whatever touching the matters here involved. So far we regard the facts as being established by the record beyond controversy. Indeed they are not seriously disputed, save as to the capital stock of respondent being all subscribed for. This disputed fact we will notice later.

Before proceeding further it will be well to briefly state the grounds upon which appellant claims relief. The sub-

stance of these, we gather from the complaint, are that respondent, through its president, made certain false representations to the officers of appellant, which induced appellant to enter into the contracts above quoted from and give the conveyance in consummation thereof—to the effect that the capital stock of respondent was all fully and actually subscribed for upon the making of appellant's subscription, that the means necessary for the construction and putting in operation of a manufacturing plant of the nature mentioned in the contracts were available, and that respondent was intending to proceed with the construction of, and put in operation, such a plant upon the land. These representations are alleged to have been knowingly falsely made, and made for the purpose of inducing appellant to enter into the contracts and give the deed for the land. It is further alleged, in substance, that after the issuing of stock to appellant and the conveyance of the land by it to the respondent, the work of constructing the plant was abandoned, and no further calls made upon the stock subscribers to pay their subscriptions to furnish means for proceeding with the construction.

Respondent by its answer, in substance, denies the making of false representations, as alleged by plaintiff; and alleges, that its capital stock was fully and legally subscribed for upon the making of appellant's subscription; that respondent entered upon the land in absolute good faith with full intent and purpose of erecting its plant thereon; that about November 1, 1907, owing to the business depression then prevailing and which had prevailed since about October 1, 1907, the conditions became such that the plant, if completed, could not be operated at a profit, and it was therefore deemed advisable to defer further construction, and accordingly the board of trustees resolved to and did defer construction of the plant until such time as the industrial conditions of the country would warrant proceeding therewith, but that it never has been the intention of respondent

to abandon the enterprise; that, when appellant gave to the respondent a deed for the land in pursuance of the contract, appellant did so with full knowledge that further construction of the plant had been deferred to some future time. The foregoing we think is a sufficient statement of the issues to show the main contentions of the parties, though both the complaint and answer alleged many other minor facts.

While many of the allegations in the pleadings, and a considerable part of the evidence, relate to matters occurring after the issuing of the stock certificate and making of the conveyance of the land in pursuance of the contracts, it is plain that the fraud relied upon to avoid the transaction must have occurred prior to the conveyance, to be available to appellant as grounds of relief. We have stated that the stock was all subscribed for. While there is no substantial dispute as to the stock being subscribed for in form, it is contended by appellant's counsel that the evidence shows it was never all subscribed for in good faith with the intention, on the part of the respondent and all the subscribers, of rendering all the subscribers liable for the payment of their subscription, and that $100,000 of the subscriptions were made with the understanding that payment therefor would not be required. This alleged understanding between respondent and certain of its stock subscribers appellant claims to have been ignorant of until long after making conveyance of its land in payment of its stock.

The evidence shows that the respondent contemplated the construction of a plant in the first instance which would cost in the neighborhood of $75,000, and to that end contemplated the issuing of only $100,000 of its stock for the time being, the balance to be paid for and issued in the future to furnish capital for the further development of the enterprise. To this extent, it may be fairly drawn from the evidence that it was understood that payment for this additional $100,000 subscription would not be called for to aid in the construction of the plant originally contemplated, but would be later

called for to aid in future development. We do not think the evidence warrants the conclusion that any of the subscribers were relieved from legal liability to pay for their stock subscriptions. The subscriptions, except that of appellant, were made in writing, unconditionally except as to the times of paying therefor, which were as follows: "Ten per cent in cash upon demand; 50 per cent upon demand on or after October 15, 1907; 20 per cent upon demand on or after December 1, 1907; and the remaining 20 per cent upon demand on or after January 1, 1908." The first ten per cent was called for, and a considerable part thereof paid, before the suspension of the work on the plant, though no calls beyond the first ten per cent have been made.

There was evidence, which we think sufficient, to warrant the conclusion that this contemplated plan of starting the enterprise was known to appellant before it accepted its certificate of stock and conveyed the land to respondent. It is also contended that the evidence shows that several of the subscribers were wholly irresponsible financially and unable to pay their subscriptions, and that such facts were known to the officers of the respondent who procured such subscription. The record does contain some evidence tending to show that some of the subscribers would not be able to promptly respond to an assessment call. But we do not think that the evidence is such as to warrant our holding that there was such a want of ability to pay on the part of the subscribers, and knowledge thereof upon the part of the respondent's officers, as will support the charge of fraud in the procuring of such subscriptions. The work upon the plant was suspended before appellant made conveyance of its land to respondent. This suspension, it was claimed by respondent, was on account of the financial and business depression prevailing throughout the country generally, which commenced after the organization of respondent and the subscription was made to all of its stock. The fact of this suspension and the reasons claimed by the officers of re-

spondent for suspending the work, we think the evidence shows, was known to appellant before it made the conveyance and received its stock certificate.    We have carefully read all of the several hundred pages of the testimony and exhibits, and without attempting to review the same further in detail, which we think would serve no useful purpose, we conclude that, under all the circumstances shown, there is not such a showing of false representation and fraud upon the part of respondent and its officers, prior to the conveyance of the land made by appellant in compliance with the contracts, as to warrant the granting of the relief prayed for.

We have noticed the fact that a considerable part of the evidence relates to matters occurring after the conveyance of the land, which constituted the final execution of the prior contracts between the parties.    We regard this evidence material here only for the purpose of throwing light upon the question of the good faith of respondent and its officers in the inauguration and carrying on of the enterprise up to the time of the conveyance.    Of course what happened after that could not have influenced appellant to enter into the contract or make the conveyance.    There is evidence tending to show that the trustees have decided to further delay the construction of the plant and not call for further payments upon stock subscription at the present time, but we do not think the evidence shows an intention to abandon the enterprise.    The evidence in the record along these lines we think does not materially support appellant's claim of false representation and fraud on the part of respondent prior to the conveyance of the land.

Learned counsel for appellant seemed to make some claim to relief based upon the theory that respondent has forfeited its right to the land by having failed to fulfill conditions upon which the grant was made.    In view of the form of the conveyance, we are unable to see how appellant's claim can be sustained upon any such theory.    There being

no conditions in the conveyance the failure to perform which would work a forfeiture of respondent's title, the question of forfeiture by breach of conditions we think can in no event be in the case. It is true, the original contract for the conveyance contemplated the erection of the plant on the land, but even that contract fixed no time for the completion of the plant, nor did it in any manner provide that the completion of the plant should be a condition precedent to the respondent being entitled to the deed. The only condition in that respect was the making of $5,000 worth of improvements on the land and paying the purchase price in the form of stock, which we have seen was done. All these preliminary matters were merged in the conveyance, which was the final consummation of the deal, and the question of forfeiture of respondent's title by reason of breach of conditions must be determined by the terms of the final conveyance, which we have seen contained no conditions whatever which could work a forfeiture. 13 Cyc. 616. Of course the question of fraud in procuring the contract and conveyance is another matter, but this we have resolved in respondent's favor.

We find no prejudicial error in the rulings of the learned trial court upon the admission and rejection of evidence, as claimed. In any event, such rulings would not change the conclusions we have reached.

The judgment is affirmed.

RUDKIN, C. J., CROW, MOUNT, and DUNBAR, JJ., concur.