[No. 25527.   En Banc.   October 14, 1935.]

IRONS INVESTMENT COMPANY, *Appellant,* v. LORETTA M. RICHARDSON, *Respondent.*[1]

*C. A. Schneider,* for appellant.

*Green & Burnett,* for respondent.

STEINERT, J.—This is an action to recover upon an alleged written agreement to pay for services ren-

[1]Reported in 50 P. (2d) 42.

dered in effecting a sublease of a storeroom. Demurrer to the complaint as amended having been sustained and plaintiff having elected not to plead further, judgment of dismissal was entered. Plaintiff has appealed.

The question before us is whether the amended complaint states a cause of action. The substance of the pleading may be summarized as follows:

On and prior to February 6, 1934, respondent, Loretta M. Richardson, was, and now is, the owner and holder of a long-term lease covering the Eitel building, in the city of Seattle. Within the same period, appellant, Irons Investment Company, was, and still is, a corporation organized and existing under the laws of Washington, having paid the annual fee required of it to do business in this state. On February 16, 1934, appellant, upon application, obtained from the state a license to act as a bonded real estate broker.

Prior to February 6, 1934, appellant had rendered assistance and services to respondent in an attempt to effect a sublease of a portion of the building from respondent to Capitol Hill Pharmacy and Best Drug Stores. The sublease, as ultimately effected, bears date February 6, 1934, and was acknowledged by the sublessees on February 8, 1934. In payment of the services rendered by appellant in connection with procuring the sublease, the respondent, on February 6, 1934, signed and delivered to George B. Baker, for the use and benefit, and on behalf, of appellant, a letter reading as follows:

"Mr. Geo. B. Baker,             Seattle, Washington.
"606 Eitel Building,            February 6, 1934.
"Seattle.
"Dear Sir:
"In case we consummate the proposed lease between myself as lessor and the Capitol Hill Phar-

macy and Best Drug Stores as lessees, it is my intention and you are hereby authorized to state that upon said completion of said lease and payment of rental by lessee there shall be due and owing from me to the Irons Realty Co. [Irons Investment Company] of Seattle, the sum of fifteen hundred dollars which I agree to pay from the first full months rental under said lease. Yours very truly,

"Loretta M. Richardson."

The sublease was thereafter assigned to George H. Bartell on February 17, 1934, upon the written consent of the respondent. Bartell went into possession of the premises subleased, on March 1, 1934, and the first month's rental thereunder was paid some time in the following April. Appellant thereupon demanded payment of the fifteen hundred dollars from respondent, but the demand was refused.

As we proceed with the discussion, it is to be remembered that the services rendered by appellant were performed prior to the execution and delivery of the written instrument above set forth, and prior to the time that appellant's license to act as a real estate broker was issued to it.

The decision of this case rests largely upon the construction and applicability of certain portions of the real estate brokers' act, which is contained in Rem. Rev. Stat., §§ 8340-1 to 8340-23 [P. C. §§ 5724-1 to 5724-23].

Rem. Rev. Stat., § 8340-4 [P. C. § 5724-4], so far as it is material here, provides:

"Within the meaning of this act, a real estate broker is a person who, for a compensation or promise thereof, performs one or more acts of selling or offering for sale, buying or offering to buy, *negotiating* or offering to negotiate, either directly or indirectly, whether as an employee of another or otherwise, *the* purchase, sale exchange, *lease or rental of real estate* or interest therein for another person;

The word 'person' as used in this act, shall be construed to mean and include a corporation, . . ."

We have italicized that portion of this section which calls for particular attention.

Section 8340-5 [P: C. § 5724-5] makes it unlawful for any person to engage in the business, or act in the capacity, of real estate broker, within this state, without first obtaining a license therefor. Section 8340-17 [P. C. § 5724-17] makes it a misdemeanor for any person to act as a real estate broker without a license.

█ Appellant's first contention is that the services rendered by it, and upon which the subsequent agreement was based, involved the leasing of personal property only and not of real estate or any interest therein, and that therefore appellant was not required to have a real estate broker's license. Appellant's argument is that respondent's leasehold was but a chattel interest and therefore personal property; that the interest created by the sublease was, likewise, a chattel interest and personal property; and that, therefore, the sublease was to be regarded in law as a sale of a part of the lease, or, in other words, as a sale of personal property. Upon this line of reasoning, appellant concludes that the transaction was not within the purview of the real estate brokers' act.

It has frequently been held by this court, and it may, therefore, be conceded, that a leasehold interest in real estate is personal property, transferable as such. *Taylor v. Basye,* 119 Wash. 263, 205 Pac. 16; *Myers v. Arthur,* 135 Wash. 583, 238 Pac. 899; *Salisbury v. Alskog,* 144 Wash. 88, 256 Pac. 1030; *Sakris v. Eagle Indemnity Co.,* 176 Wash. 73, 28 P. (2d) 316. It would naturally follow, and may likewise be conceded, that the interest created by the sublease and

passing to the sublessees was also, in law, personal property. But it does not follow from these premises that the negotiations conducted by appellant did not *involve* real estate or an interest therein, nor does it follow that such negotiations are not within the purview of the real estate brokers' act.

The objective sought by the legislature in passing the real estate brokers' act was not to define or classify the nature of property interests for purposes of conveyancing or of providing for levy under execution. Its obvious purpose was to forbid and prevent persons from performing, for compensation, *any act* of selling or buying real estate or any interest therein for any other person, or of *negotiating the* purchase, sale, exchange, *lease or rental of real estate* or any interest therein for another person.

Construing § 8340-4 [P. C. § 5724-4], we held, in the case of *Salisbury v. Alskog,* 144 Wash. 88, 256 Pac. 1030, that the words "lease or rental," as used in the statute, mean but one thing, that is, the procuring of a tenant. What the appellant in this case did when it negotiated the sublease was to procure a tenant of real estate for respondent. It was immaterial whether respondent owned the real estate itself, or whether her interest therein was, in law, only personal property. During the term of her lease, respondent possessed all the rights which the owner of the freehold formerly had with respect to subleasing or renting the property. Regardless of the fact that respondent's lease was, in law, only personal property, the sublease itself operated upon, and was a lease of, real estate and was negotiated by appellant for another person, namely, the respondent. We are satisfied that the statute in question was applicable to the transaction.

In this connection, appellant further con-

tends that the real estate brokers' act does not apply to this case, for the reason that it does not appear from the complaint that appellant's services were performed for compensation or promise thereof. The appellant was engaged generally in the business of handling and dealing in real estate and leasing properties. Its activities would ordinarily be exerted for compensation or gain, and not expended gratuitously. However, for the purposes of this case, we shall adopt appellant's supposition and assume, violent as the assumption may be, that, in this instance, appellant performed its services without any promise of compensation, but simply as a favor.

We have, then, a subsequent written agreement to pay for services rendered gratuitously. But there was no consideration for such agreement. It could not be contended that there was any legal obligation resting on respondent to pay for the services, in the absence of any promise, express or implied, to pay for them. Nor, under the circumstances, was there any moral obligation to pay therefor. A past consideration, even though of benefit to the promisor, is insufficient when the services rendered are intended and expected to be gratuitous. *Allen v. Bryson,* 67 Iowa 591, 25 N. W. 820, 56 Am. Rep. 358; *Gooch v. Gooch,* 70 W. Va. 38, 73 S. E. 56, 37 L. R. A. (N. S.) 930; *Williams v. Moss,* 114 W. Va. 488, 172 S. E. 529; *Shepherd v. Young,* 8 Gray (Mass.) 152; *Moore v. Elmer,* 180 Mass. 15, 61 N. E. 259; *Blanshan v. Russell,* 52 N. Y. Supp. 963; *In re Van Vranken's Estate,* 120 Misc. 280, 198 N. Y. Supp. 445; *Kilborn v. Pyne,* (3 C. C. A.) 279 Fed. 864; 1 Page on Contracts (2d ed.), § 627, p. 1080; 13 C. J., p. 359 *et seq.,* § 220; 6 R. C. L. 672. To say that there is a moral obligation to pay for services intended as a gratuity, is in itself inconsistent and contradictory.

It is true that this court has adopted the rule that, under certain circumstances, a moral obligation will support a subsequent promise to perform. *Quaker City National Bank v. Tacoma*, 27 Wash. 259, 67 Pac. 710; *Muir v. Kane*, 55 Wash. 131, 104 Pac. 153, 26 L. R. A. (N. S.) 519; *Olsen v. Hagan*, 102 Wash. 321, 172 Pac. 1173, affirmed on rehearing in 105 Wash. 698, 178 Pac. 451; *Henneberg v. Cook*, 103 Wash. 685, 175 Pac. 313; *White v. Panama Lbr. & Shingle Co.*, 129 Wash. 189, 224 Pac. 563; *Sams v. Olympia Holding Co.*, 153 Wash. 254, 279 Pac. 575; *Palmer v. Stanwood Land Co.*, 158 Wash. 487, 291 Pac. 342. But in each of those cases it was established that there was indeed an antecedent moral obligation on the part of the promisor to do the thing that he subsequently agreed in writing to do.

In the *Quaker City National Bank* case, the city had misappropriated moneys belonging to a special fund against which plaintiff's warrants were drawn and out of which he was entitled to have them paid. The city subsequently passed an ordinance creating a special fund to meet the misappropriation. It was held that the misappropriation created a limited liability on the part of the city sufficient to support a subsequent promise to pay according to the terms of the ordinance creating the special fund. In the *Olsen* case, the defendant had promised her dying husband that she would pay the plaintiff a specified sum of money for services rendered by the latter, and, pursuant to her promise, had executed three promissory notes aggregating the sum specified. It was held that the promise to perform a dying request raised a moral obligation to perform it. In all the other cases there were previous oral contracts to pay brokers' commissions on the sale of real estate, which, because of the statute of frauds, were unenforcible. In recog-

nition of the obligations arising under the oral contracts, subsequent written promises to pay for the services were executed. It will thus be seen that, in each of these instances, the facts established an antecedent moral obligation, and it was so held by this court. In this case, however, there was no moral obligation to pay for the services if rendered and considered solely as a gratuity.

■ Appellant finally contends that, at the time that its cause of action *arose*, it had obtained its real estate broker's license and therefore was legally entitled to maintain the action. This contention is based on the allegations of the complaint to the effect that appellant's license was issued to it on February 16, 1934; that the sublease was consummated on February 17, 1934, which was the date of assignment of the sublease from the original sublessees to Bartell; and that the first month's rental, out of which appellant was to be paid, was not received by respondent until some time in the following April. This phase of the argument proceeds upon the assumption that the services were rendered for compensation and not gratuitously. Under these collective allegations, appellant contends that, by Rem. Rev. Stat., § 8340-20 [P. C. § 5724-20], which is a part of the real estate brokers' act, it was incumbent on appellant merely to allege and prove that it was a duly licensed real estate broker at the time that its cause of action *arose*.

This contention is, for several reasons, unsubstantial and unsound: (1) The fact is, as shown by the amended complaint, that the sublease was acknowledged on February 8, 1934. That was the date on which the transaction pertaining to the sublease was consummated, and that was *before*, not *after*, the issuance of the real estate broker's license. (2) The

provision of § 8340-20, with reference to the license condition precedent to action, does not constitute a *limitation* upon §§ 8340-4, 8340-5, and 8340-17, above referred to, but rather imposes an added burden upon those who may have otherwise complied with the requirements of the act, considered in its entirety. In other words, such person must not only comply with § 8340-20, but with the other provisions of the act as well. (3) Appellant's agreement to perform, and its performance of, the alleged service, was illegal. When a plaintiff, to make a case, must rely upon an illegal contract or upon the performance of an illegal act, he cannot recover. *Deaton v. Lawson,* 40 Wash. 486, 82 Pac. 879, 2 L. R. A. (N. S.) 392, 111 Am. St. 922; *Stirtan v. Blethen,* 79 Wash. 10, 139 Pac. 618, 51 L. R. A. (N. S.) 623; *Moser v. Pantages,* 96 Wash. 65, 164 Pac. 768.

If appellant's contention were sustained, then the obvious purpose of the statute could be easily and entirely circumvented. A broker without a license could enter into an inhibited contract, perform all the services forbidden by the statute, do everything that a licensed broker could do, and yet, by merely providing in the contract that the payment of his commission should be postponed to some future date, could enforce collection thereof by taking out a license at any time before the postponed date. That the legislature did not intend to encourage any such strategy is indicated by the emphatic language of the act itself. It says in § 8340-5 that it shall be unlawful for any person to engage in the business or act in the capacity of a real estate broker without first obtaining a license therefor. And then, to make compliance with this provision doubly sure, it provides in § 8340-17 that anyone who violates such provision shall be guilty of a misdemeanor.

In order to recover a real estate broker's commission, a party must have a real estate broker's license at the time that he renders the service for which he seeks payment of a commission. *Goldin v. Shankroff*, 125 Misc. 822, 211 N. Y. Supp. 569; *Davis v. Chipman*, 210 Cal. 609, 293 Pac. 40.

The judgment is affirmed.

BLAKE, MAIN, MITCHELL, TOLMAN, and BEALS, JJ., concur.

HOLCOMB, J., dissents.