[No. 28539. *En Banc.* July 9, 1942.]

G. L. STANDRING *et al., Appellants,* v. R. M. MOONEY *et al., Respondents.*[1]

[1]Reported in 127 P. (2d) 401.

*Simmons & McCann*, for appellants.

*McMicken, Rupp & Schweppe* and *Bernard Reiter*, for respondents.

STEINERT, J.—Plaintiffs brought this action to quiet their title to certain lands as against any claims of the defendants. The cause was tried to the court sitting without a jury. At the conclusion of the plaintiffs' case, the defendants interposed a challenge to the sufficiency of the evidence and a motion to dismiss the action. The challenge was sustained and the motion was granted by the trial court. The plaintiffs thereupon moved for judgment notwithstanding the oral decision of the court or, in the alternative, for a new trial. This motion was denied, and judgment of dismissal was entered, from which the plaintiffs have appealed.

The appellants, who are husband and wife, owned a

tract of land consisting of some three hundred acres located on Puget Sound south of the corporate limits of Seattle. They undertook to improve, subdivide, and sell this land for residential purposes. About the same time they became acquainted with respondent R. M. Mooney, who represented himself to be a real estate operator recently arrived from California, where he claimed to have been engaged in subdivision work of this sort. Mooney apparently suggested a plan for subdividing and selling the property, and this plan was incorporated into a contract which was drawn up by the appellants' attorney and was signed on November 6, 1939, by Mooney and the appellants. This contract outlined the proposed sales plan in great detail, and the intentions of the parties can best be shown by quoting at some length from the instrument:

"Whereas, *in order to create a proper set-up to handle said transaction, it appears advisable to form a Washington corporation to receive title to portions of said land,* giving a mortgage back to Standrings, and to make contracts with purchasers of the land in the corporate name, assign such contracts to Standrings for partial release of mortgage, *and to generally constitute the sales agency for said venture,* . . .

"Now, Therefore, in consideration of the mutual covenants herein, It Is Agreed as follows:

"1. That Standring will conduct all of said project, and will do all things necessary by him to carry said project on to completion, *including the financing thereof.*

"2. Mooney agrees to perform any and all things of him required by the terms of this agreement to carry said project on to completion.

"3. The first unit of said project, comprising approximately Twenty-nine (29) acres, shall be known as 'Shorewood', which addition shall consist of approximately Ninety (90) lots, . . .

"7. It is the intent of this agreement that Mooney shall relieve Standring of any and all promotional contact work, negotiation, and/or planning, in order that

Standring may be free to devote such time to construction work throughout the project as he is able to perform.

"8. Standring agrees to immediately convey to the sales corporation to be formed, the fee simple title to the ground contained in said Shorewood plat, and in return therefor, Mooney shall cause said sales corporation to execute a purchase money mortgage to Standring in the sum of Sixty Thousand Dollars ($60,000.00), payable *without interest* as follows: Not less than Twenty Thousand Dollars ($20,000.00) by the end of the first year, not less than Forty Thousand Dollars ($40,000.00) by the end of the second year, not less than Fifty Thousand Dollars ($50,000.00) by the end of the third year, and the entire balance to be paid not later than four years from date hereof.

"9. It is understood that conveyance as above stated is to be made under the agreement that the sales corporation will pay to Standring to obtain a partial release from said mortgage of any lot hereafter sold by said corporation, the following sums of money for the following lots, . . .

"10. As and when any of said lots are sold, Standring shall execute a partial release of said lot from the lien of said mortgage upon the payment to him in cash of the full amount contained in the above schedule, or the assignment to him of the contract of such, and the payment of part in cash, as the case may be.

"12. *Mooney agrees to pay for his own advertising, any sales help he may employ, sign boards he may erect, his telephone, light and expense of incorporating and maintaining a sales company. All other expenses incurred, such as filing fees and payments for obtaining the prescriptive water right, installing and constructing the water system, incorporating the water association, grading, clearing, engineering work, surveying, legal work, title insurance premiums to purchasers on lots sold, taxes on unsold property, stamp tax on deeds to purchasers of lots sold, etc., shall be borne by Standring, it being the intent of this agreement that Standring will continue in the financing of this project, notwithstanding said mortgage arrangement, the same as though he had continued as the rec-*

ord · owner of all of said property, and the same as though said corporation had sold the property on a strictly percentage commission basis.

"13. It is agreed that Mooney shall devote such time not to exceed five years, as is necessary, to the sale of all portions of the whole tract involved herein, except that which may be mutually withdrawn from sale, and in return therefor *Mooney is herewith granted the exclusive right to sell all of said tract,* subject however, to the faithful performance of any and all things required of him under the terms of this contract.

"14. *If Mooney shall fail to apply himself to the said task of selling said property, or shall fail to produce sufficient sales* during five years of the period herein specified, so that it should clearly appear he is failing to maintain a sales schedule that will entirely dispose of said tract within the five-year period, *then this contract shall be deemed to have been breached by Mooney, and the exclusive right to sell the balance of said property remaining shall cease and be at an end, upon the giving of written notice thereof by Standring to Mooney and/or said sales corporation.*

"17. It is understood that commissions for sales in the Shorewood plat are limited strictly to the differential in the sales price of said lots and the mortgage release price established in Exhibit B, attached hereto, which differential shall belong to Mooney, or the corporation, in lieu of any real estate commission.

"18. *It is agreed that there is no personal financial responsibility on Mooney in signing said mortgage,* or any subsequent mortgages other than that in order to obtain the partial release from the mortgage lien of any lot sold, payment must be made according to the provisions of this agreement. *If and when any of the unsold lots covered by said mortgage are reconveyed to Standring,* if the same cannot be sold, or if they are reconveyed for any other reason, *liability pro tanto on said mortgage shall cease and determine.*

"21. *At the expiration date hereof, or on prior termination of this agreement, by forfeiture or mutual consent, title to all property of said tract then remaining in the name of Mooney and/or his corporation shall immediately be reconveyed to Standring,* provided

however, that in lieu of reconveyance the said Mooney shall have the right to pay Standring in cash for all or any portion of said property in accordance with the schedule of prices attached hereto in Schedule B.

"22. *Any reference herein to Mooney and/or the sales corporation applies equally to Mooney and the sales corporation, it being the intendment of this agreement that they are one and the same* [with one exception not here pertinent]." (Italics ours.)

After this contract was executed, and in pursuance thereof, Mooney organized the respondent Shorewood, Inc., and on November 16, 1939, the appellants executed and delivered to this corporation an unqualified warranty deed purporting to convey approximately twenty-nine acres of land, the first unit in the proposed real estate development. The deed recited a consideration of sixty thousand dollars, and on the same day the corporation executed a non-interest-bearing note in that amount payable to G. L. Standring and secured by a mortgage upon the land described in the deed. The note provided that it should be paid in accordance with the terms of the contract of November 6th, and the mortgage contained a stipulation that it was to be partially released as to any lots for which the corporation should pay appellants the prices theretofore fixed by the parties. These agreed release prices are set forth only in the contract of November 6th. Both the deed and the mortgage were duly recorded; the contract, however, does not appear to have been placed of record.

The arrangement provided for in the contract remained in effect for a little more than a year, during which time the corporation sold a number of lots, paid the appellants approximately fifty-six hundred dollars, and assigned to them at least one of the contracts of sale, receiving in return corresponding partial releases

of the appellants' mortgage. Thereafter, appellants became dissatisfied with the manner in which Mooney was performing his obligations under the contract, and on January 28, 1941, they served upon him and the corporation a written notice of termination of the contract and demanded reconveyance of all the property to which the corporation still held title. Respondents having failed to comply, appellants then instituted this action.

The sole question to be decided upon this appeal is whether the appellants may enforce their rights in this land under Rem. Rev. Stat., § 785 [P. C. § 7517], relating to actions to quiet title, or whether they must be relegated to the remedy of foreclosing their mortgage. The section of the statute just referred to provides:

"Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought against the tenant in possession; . . . and may have judgment in such action quieting or removing a cloud from plaintiff's title; . . ."

The answer to the question before us will be largely determined by the nature of the relationship between the parties, which can be discovered only by a consideration of the contract of November 6, 1939. The respondents insist, however, that we may not go behind the language of the deed, and that, since it is absolute and unconditional on its face, the appellants' only remedy is by foreclosure. They argue that the execution of a deed is the most solemn and binding act a man can perform with reference to his land, and that a grantor is therefore estopped to attack his own deed, except for fraud or upon the ground that it was in fact intended as a mortgage.

While respondents' argument is a correct

statement as a general proposition, it is not conclusive or controlling here. As stated in 16 Am. Jur. 537, Deeds, § 175:

"It is a general rule of construction, well settled by the authorities, that in order to ascertain the intention of the parties, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties, or, in other words, made as parts of substantially one transaction, may be taken together and construed as one instrument."

See, also, 2 Devlin, Real Estate (3d ed. 1911) 1541, § 845; 26 C. J. S. 338, Deeds, § 91a.

It is true that the contract here in question was signed by the appellants and Mooney, while the deed, note, and mortgage ran between appellants and the corporation, but the contract provided, and the trial court expressly found, that Mooney and the corporation are in fact one and the same, so that the requirement of identity of parties is satisfied. It is also true that ten days elapsed between the execution of the contract and the execution of the other three instruments. In this case, however, the deed, note, and mortgage were all executed in pursuance of the terms of the contract and clearly were regarded by the parties as parts of the same general transaction. Under such circumstances, we consider strict contemporaneity unnecessary and therefore hold that all these instruments should have been read together in determining the relations of the parties to this action with respect to the property here involved.

This conclusion is reinforced by another rule, which renders even parol evidence admissible to show the grantor's purpose in making a particular deed. As stated in 16 Am. Jur. 687, Deeds, § 445:

"There are certain situations in which parol evidence is admissible. Parol evidence is admissible to show the circumstances under which a deed was made

and the relation of the parties to the contract of conveyance and to each other with respect to it. Parol evidence of the surrounding circumstances will be received and taken into consideration in order to ascertain whether the document under consideration is a deed or a contract for the sale of property. A parol agreement in pursuance of which a deed is executed is frequently admissible in evidence. The purpose for which property is conveyed to, and is used by, a religious society may be shown by parol if it is not set out in the title papers. *The statute of frauds does not exclude parol evidence of a contract to the effect that the deed was to be made to the grantee so as to enable him as agent to sell and give title more easily.*" (Italics ours.)

See, also, *Collins v. Tillou's Adm'r*, 26 Conn. 368, 68 Am. Dec. 398. We have approved and applied this rule. In *Brown v. Bremerton*, 69 Wash. 474, 125 Pac. 785, we said: "It is familiar law that parol testimony is admissible to show the circumstances under which a deed was made." If parol evidence is admissible for this purpose, there can be no doubt about the propriety of considering any relevant written instruments which the parties may have executed, whether they are exactly contemporaneous with the deed or not. See 26 C. J. S. 339, Deeds, § 91a.

It is undisputed that the legal title to the land here in question is in the respondent corporation, subject only to the mortgage in favor of the appellants. In the normal case where land has been conveyed by an unqualified deed, and the grantee has given a note for a part, or even the whole, of the purchase price and has secured the note by executing in favor of the grantor a mortgage on the granted premises, the relation between the parties is ordinarily that of vendor and vendee, and in such instances, the grantee, having become vested with the title, cannot be divested thereof except by foreclosure of the mortgage. The

trial court held that this general rule should be applied in this case.

The situation involved here is, however, actually far different from the normal case, above outlined, of sale, deed, and mortgage back, and consequently takes the case outside the application of the general rule. The contract between the parties to this action demonstrates on its face that the transaction here in question was not an ordinary sale of land. On the contrary, it is clear therefrom that the parties intended to devise and carry into execution a specific plan for effecting the sale of appellants' land to prospective purchasers, and that the immediate title thereto was transferred to the respondent corporation simply to facilitate that purpose. Appellants and the corporation therefore stand in the relation of principal and agent, rather than that of vendor and vendee. *Collins v. Tillou's Adm'r, supra.* See, also, 2 Restatement, Agency (1932) § 423, as indicating that such an agency for the holding of title to land is permissible.

Every provision in the contract clearly shows that such was the true nature of the relation intended to be created. The corporation assumed no liability for the price of sixty thousand dollars recited in the deed, although it gave a note in that amount to the appellants. This note was specifically made payable in accordance with the terms of the contract, or in other words, in installments as each lot should be sold and the price, or the contract of sale, thereof turned over to the appellants to the extent necessary to discharge the release price thereon. In actuality, therefore, the sixty thousand dollars was to be paid by those whom Mooney should induce to purchase lots from the sales corporation, and respondents were to receive as commission whatever differential they might realize over and above the release prices of the respective lots. The con-

tract expressly exempted Mooney from any personal liability, and this must be regarded as applying equally to the corporation. The agreement further provided that the note and mortgage might be satisfied at any time by reconveying to the appellants any lots then remaining unsold. These factors make it clear and certain that respondents' role was intended to be that of agents in a real estate development enterprise.

Furthermore, the obligations which the appellant G. L. Standring assumed under the contract are utterly inconsistent with the theory that the deed to the respondent corporation was intended to convey title for any purpose other than to facilitate its functioning as a sales agent. He agreed to continue to finance the entire project, to pay for and supervise the work of clearing and grading the property and installing a water system, and to pay all attorney's fees, taxes on the unsold lots, title insurance premiums incidental to the sale of lots, and any stamp taxes which might be required in connection with such sales. These are certainly not things which would ordinarily be done by one who had simply sold his land and retained a mere lien thereon under a mortgage given to secure the purchaser's note for the price. They are entirely appropriate, however, in a transaction where one who owns the equitable title to land lodges the legal title thereto in another person for the purpose of facilitating a plan of subdivision and sale.

The responsibilities which Mooney assumed under the contract are, on the other hand, just what would be expected of an agent for the sale of real estate. Thus, he agreed to pay any advertising expenses, the salaries of any sales help he might employ, the expense of organizing the sales corporation, and other charges of a similar nature. Further, as has already been explained, he was to be compensated in the manner

proper to such an agent, by the payment of commissions in the form of the right to retain any differential between the release prices agreed upon in the contract and the prices for which he should actually sell the lots. His status as a mere agent for the sale of the land is still further indicated by the express provision in the contract conferring upon him, for five years, the exclusive right to sell the appellants' land. These stipulations are not ordinarily characteristic of an agreement wherein it is really intended that the landowners' deed shall invest a sales corporation with full beneficial title.

When to all this we add the fact that the contract recites that the corporation is to be formed

". . . in order to create a proper set-up to handle said transaction [i. e., the subdivision and sale of the property] . . . and to generally constitute the sales agency for said venture,"

it becomes unmistakably evident that the whole relationship between the parties was one of principal and agent and requires that the appellants be held to be the beneficial owners of the property here in question, even though the respondent corporation claims legal title thereto in violation of its contractual duty to reconvey upon termination of Mooney's agency. It therefore follows that the appellants are entitled to maintain this action to quiet their title, under the provisions of Rem. Rev. Stat., § 785.

The fact that appellants also hold a mortgage on the property is, under the peculiar facts of this case, utterly immaterial. That mortgage was not intended to secure an obligation to pay an agreed price for the property, because no such obligation existed. The mortgage was designed merely to constructively notify third parties of appellants' interest in the land and thus enable them to protect themselves against the possi-

bility of Mooney's selling the property and failing to account to the appellants for the proceeds. The respondents possess no equity in the property now remaining unsold because they have never paid a cent toward its purchase, and there is therefore no reason for affording them the period of redemption to which a mortgagor is customarily entitled. Consequently there is no injustice in permitting appellants to resort to the summary remedy provided for in the contract, instead of requiring them to proceed to foreclose their mortgage.

The judgment is reversed, with direction to the trial court to determine the issues presented by appellants' complaint, in a manner consistent with the views herein expressed, and, unless the respondents refute the appellants' claim of right of forfeiture, enter a decree requiring the respondent corporation to reconvey to appellants all the lots to which it held legal title at the time of service upon respondents of the notice of forfeiture.

ROBINSON, C. J., BEALS, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

MAIN, J. (dissenting)—I am of the view that the appellants have no right to maintain an action to quiet title against their unqualified and unconditional general warranty deed by which they conveyed the fee simple title to the corporation.

In 1 Cooley's Blackstone (4th ed.), p. 670, under the heading "Of Alienation By Deed," the author says:

" . . . it is the most solemn and authentic act that a man can possibly perform, with relation to the disposal of his property; and therefore a man shall always be *estopped* by his own deed, or not permitted to aver or prove any thing in contradiction to what he has once so solemnly and deliberately avowed."

In *Fletcher v. Peck,* 6 Cranch. (10 U. S.) 87, 3 L. Ed. 162, it was said:

"Yet the legislature of Georgia has involved them in the fate of the first parties to the transaction, and, if the act be valid, has annihilated their rights also. The legislature of Georgia was a party to this transaction; and for a party to pronounce its own deed invalid, whatever cause may be assigned for its invalidity, must be considered as a mere act of power, which must find its vindication in a train of reasoning not often heard in courts of justice."

To this general rule, stated by the two authorities just mentioned, there are certain exceptions in this state. The first is: If the deed is void *ab initio*; second, if there is fraud; and, third, if the deed is intended as a mortgage. In those instances, oral testimony may be received which would modify or set aside the deed. In this case, there was no claim that the deed was void *ab initio,* that there was any fraud, or that the deed was intended as a mortgage.

In the case of *Beverly v. Davis,* 79 Wash. 537, 140 Pac. 696, it was held that an action to declare a deed a mortgage was grounded on fraud. It was there said:

"The action is grounded in fraud, and equity permits the fullest inquiry, to the end that the intention of the parties may be ascertained and enforced. The presumption is that the transaction is what it purports, and the one asserting that the written instrument masked the real transaction must prove his case by clear and convincing evidence. [Citing authorities.]"

There is no claim of fraud in the case now under consideration.

In the case of *Richmond v. Morford,* 4 Wash. 337, 30 Pac. 241, 31 Pac. 513, it was held that, where a grantor delivers a duly executed deed to the grantee, with the understanding that it should take effect upon the payment of certain liens and the execution of a mortgage

by the grantee, the deed becomes operative at once and passes title to the grantee absolutely. It was there said:

"But in the case at bar, the deed, which was absolute upon its face and completely executed and required no further act on the part of the grantors to give it validity, passed into the possession and under the power and dominion of appellant, with the knowledge and consent of respondents, and must, therefore, be held to have been delivered. *Dearmond v. Dearmond*, 10 Ind. 191; 1 Devlin on Deeds, § 314. 'The delivery of a deed is complete,' says Mr. Greenleaf, 'when the grantor or obligor has parted with his dominion over it, with intent that it shall pass to the grantee or obligee, provided the latter assents to it, either by himself or his agent.' 2 Greenl. Ev., § 297."

The case of *Jones-Thompson Inv. Co. v. Cascade Steel Foundry Co.*, 59 Wash. 601, 110 Pac. 417, was an action to procure the cancellation of a subscription made by the plaintiff to the capital stock of the defendant upon the organization of that corporation, and to set aside a conveyance of land by the plaintiff to the defendant in payment of the stock subscribed for. A deed was delivered, which was absolute in form, without any conditions or restrictions touching the matters involved in the transaction. That case is very like the one now before us, in that the deed there, as here, was absolute in form, without any conditions or restrictions. It was there held that the plaintiff could not prevail. In the opinion, it was said:

"Learned counsel for appellant seemed to make some claim to relief based upon the theory that respondent has forfeited its right to the land by having failed to fulfill conditions upon which the grant was made. In view of the form of the conveyance, we are unable to see how appellant's claim can be sustained upon any such theory. There being no conditions in the conveyance the failure to perform which would work a forfeiture of respondent's title, the question of forfeiture

by breach of conditions we think can in no event be in the case. It is true, the original contract for the conveyance contemplated the erection of the plant on the land, but even that contract fixed no time for the completion of the plant, nor did it in any manner provide that the completion of the plant should be a condition precedent to the respondent being entitled to the deed. The only condition in that respect was the making of $5,000 worth of improvements on the land and paying the purchase price in the form of stock, which we have seen was done. All these preliminary matters were merged in the conveyance, which was the final consummation of the deal, and the question of forfeiture of respondent's title by reason of breach of conditions must be determined by the terms of the final conveyance, which we have seen contained no conditions whatever which could work a forfeiture."

Where a deed has been executed and delivered and a mortgage given to the grantor, an action to quiet title cannot be used for the purpose of avoiding the foreclosure of the mortgage. In the case of *Womach v. Harding,* 132 Wash. 184, 231 Pac. 949, it was said:

"There is no decision that we know of, under our code or any other code of civil procedure, that allows one to bring an action to quiet title, or in ejectment, and obtain the relief by foreclosure of a mortgage.

"Another statute, § 804, Rem. Comp. Stat. [P. C. § 7530], governs this situation, which reads:

" 'A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without the foreclosure and sale according to law.' "

A similar observation was made in the case of *Spedden v. Sykes,* 51 Wash. 267, 98 Pac. 752, where it is said:

"Having accepted the mortgage, they are bound, in the absence of intervening rights, to rely upon it, for it carries with it a right of redemption in appellants which is valuable to them and cannot be defeated without proper proceedings and a day in court."

As I view the above cited cases from this court, they preclude the maintaining of an action by the appellants to quiet title as against their deed and thus avoid the foreclosure of the mortgage. I, therefore, dissent.

MILLARD and BLAKE, JJ., concur with MAIN, J.