[No. 29027. Department One.   December 9, 1943.]

Shorewood, Inc., *Respondent and Cross-appellant,* v. G. L. Standring *et al., Appellants.*[1]

*Simmons & McCann,* for appellants.

*McMicken, Rupp & Schweppe* and *Bernard Reiter,* for respondent and cross-appellant.

Jeffers, J.—This action was instituted by Shorewood, Inc., a corporation, against G. L. Standring and wife, on or

[1]Reported in 144 P. (2d) 243.

about May 15, 1941, to recover damages from defendants. The right to such recovery is based upon claimed breaches, on the part of defendants, of a certain contract made and entered into by the parties November 6, 1939. The provisions of the contract, in so far as material, and the general facts surrounding the making of the contract, are set out in *Standring v. Mooney*, 14 Wn. (2d) 220, 127 P. (2d) 401.

The complaint in the present action contains six purported causes of action. In its first cause of action, plaintiff is claiming the sum of $872.50, which it is alleged is the balance of an aggregate profit of $3,315 due it from the sale of certain lots. It is alleged that this amount is due pursuant to the provisions of paragraph ten of the contract of November 6th, which provides what is to be done by the Standrings when lots are sold by the corporation, and what amount is to be received by each party from such sales. The paragraph concludes as follows:

"The interest of the corporation, as herein referred to, shall be the *differential in the sales price and the schedule of prices established herein for partial release of mortgage.*" (Italics ours.)

Plaintiff's second cause of action is based upon the allegations that plaintiff procured a purchaser for a certain lot in Shorewood addition, who agreed to pay one thousand dollars cash for the property; that, because of defendants' failure and refusal to execute a partial release of mortgage on the lot, the prospective purchaser suspended his offer of purchase, to the damage of plaintiff in the sum of $525.

The third cause of action is based upon the allegations that plaintiff had procured some five purchasers, ready, willing, and able to purchase lots; that, because of defendants' failure and refusal to comply with the contract, plaintiff was unable to consummate such sales, and thereby lost a profit of $3,275.

The fourth cause of action is based upon allegations to the effect that plaintiff had procured customers, able and willing to purchase waterfront footage which would, when platted, equal eight beach lots; that this waterfront prop-

erty was to be included in a plat to be known as Shorewood addition No. 2; that, because of the failure and refusal of defendants to comply with the agreement of November 6, 1939, and the supplemental agreement of November 5, 1940, the plat of Shorewood addition No. 2 was not filed, and because thereof plaintiff was precluded from consummating the sales to seven prospective customers, and was thereby deprived of making a profit of $5,587.50. (This claimed profit is the difference between the selling price of each lot and the price which the Standrings were to receive for a release of mortgage on the particular lot.)

The fifth cause of action is based upon allegations to the effect that, because of defendants' failure to perform the terms of the contract by them to be performed, plaintiff procured the services of one Gordon Mummey to do grading, etc., in Shorewood addition No. 2, for which services plaintiff paid $400, and became obligated to pay $1,100 additional, to its damage in the sum of $1,500.

In the sixth cause of action, it is alleged that, on or about January 28, 1941, defendants served upon and delivered to plaintiff a "notice," under which defendants sought to terminate all contractual relationships existing by and between the parties, claiming that plaintiff had failed to keep and perform the obligations devolving upon it under the terms of the agreement of November 6, 1939 (this is the notice referred to and considered in *Standring v. Mooney, supra*); that, in consequence of such notice of termination of the contract and refusal to arbitrate, plaintiff was and is deprived of the opportunity *profitably to continue in the business of selling the real property which was the subject matter of the contract;*

" . . . that said contract, which is exhibit 'A' hereto attached, extended over a period of four years from the date thereof; and that, as demonstrated upon the causes of action hereinbefore set forth, which are here incorporated by reference, the plaintiff's profit upon *sales consummated, contracted for or capable of immediate consummation through purchasers ready, able and willing to buy,* was, or would have been, for the first full and effective year of said con-

tract, to-wit, the calendar year 1940, the sum of $11,927.50, as demonstrated in plaintiff's first, third and fourth causes of action . . . and that but for defendants' derelictions as in preceding causes of action set forth, said sales would have been substantially greater; and that in consequence thereof and the breach by the defendants of their contract as herein set forth, plaintiff was deprived of the opportunity to make and consummate sales for the ensuing period of three years, to plaintiff's damage (based upon the demonstrable profit for the first year of $11,927.50) in the second year of $12,000.00, and for the third and fourth years (when the more desirable of the properties would have already been sold) of $5,000.00 each, or a total for said three years of $22,000.00."

While we do not deem it necessary to quote in full the contract of November 6th, in view of the fact that it is set forth in *Standring v. Mooney, supra,* to which reference is hereby made, we do desire to set out the first three paragraphs, in order that we may have before us the clearly expressed purpose of the parties.

"Whereas, G. L. STANDRING and EDNA STANDRING own approximately Three Hundred Twenty (320) acres of land, the legal description of which shall be attached hereto as Exhibit A, the same being a single large tract bordering on Puget Sound south of the corporate limits of the city of Seattle, and said G. L. Standring has commenced subdividing the same, and

"Whereas, R. M. MOONEY has been working with Standring, assisting in said work, and inaugurating a sales campaign for the disposal of all of said property in parcels, and

"Whereas, in order to create a proper set-up to handle said transaction, it appears advisable to form a Washington corporation to receive title to portions of said land, giving a mortgage back to Standrings, and to make contracts with purchasers of the land in the corporate name, assign such contracts to Standrings for partial release of mortgage, and to generally constitute the sales agency for said venture. . . ."

In addition to the contract of November 6th, the complaint also refers to a certain deed dated November 16, 1939, whereby the Standrings conveyed to the corporation about twenty-nine acres of the 320 acres referred to in the con-

tract. This twenty-nine acres was to be the first unit to be platted as Shorewood addition. The deed recites a consideration of sixty thousand dollars. On the same day the deed was executed, a noninterest bearing note in the amount of sixty thousand dollars was executed by the corporation, payable to G. L. Standring, and secured by a mortgage upon the land described in the deed. This mortgage was also by reference made a part of the complaint.

Defendants by their answer denied the allegations that they had not performed all the obligations required of them under the contract, and denied that plaintiff was entitled to recover on any of its purported causes of action. They admitted that they had entered into the contract of November 6, 1939, and admitted that pursuant to the terms thereof the deed and mortgage above referred to were given for the purpose of carrying out the sales program of the plaintiff corporation and R. M. Mooney, as conceived, outlined, and directed by Mooney; admitted that Shorewood addition No. 1 was duly platted and such plat recorded.

Defendants then set up four purported cross-complaints, in each of which it is alleged that plaintiff has in some particular failed to comply with the terms of the contract. Plaintiff by its reply denied the affirmative matter set up in the answer.

On August 7, 1941, defendants asked permission to file an amended answer and cross-complaint, and such permission was given on August 12th. The amended answer is much the same as the original, except that it sets up, as an affirmative defense, a plea of *res judicata* based upon a certain judgment entered in cause No. 325118, of the superior court records for King county.

The cause came on for hearing before the court on September 22, 1941. After the opening statement of counsel for plaintiff, counsel for defendants stated:

"MR. SIMMONS: At this juncture, your Honor, I would like to demur to the complaint on the ground that it fails to state facts sufficient to constitute a cause of action. This

demurrer is based not only upon the pleadings but on the statements made by counsel in his opening address.

"The Court: What his statement was—what he expected to prove?

"Mr. Simmons: Yes; by his admissions, he classifies his client as a real estate broker. Being so classified he must prove that he was licensed as such."

After some colloquy between the court and counsel, the court indicated it would reserve a ruling on the demurrer and hear testimony. Counsel for plaintiff then started to introduce his evidence, at which time counsel for defendants made the following objection:

"Mr. Simmons: I object to the offer on the ground that it is immaterial, and on the ground that it affirmatively appears from the pleadings in this cause that this plaintiff is engaged in the business of selling real estate, was so engaged throughout all of the time here in question, and had no license, and pleads no license to sell or engage in the selling of real estate.

"The Court: I understand your objection runs through to all evidence contrary to your motion?

"Mr. Simmons: Yes. I would like that understood.

"The Court: That will be understood, but it is preliminary to the right to bring this action. The objection will be overruled."

At the close of plaintiff's case, defendants challenged the sufficiency of plaintiff's evidence, which challenge was by the court denied. Defendants having elected to stand on their challenge, the court made and entered findings of fact, conclusions of law, and judgment favorable to plaintiff on its first two causes of action and, in part, on its third cause of action, but dismissed plaintiff's fourth, fifth, and sixth causes of action. Motion for new trial was made by defendants, and denied. Defendants have appealed from the judgment entered, and plaintiff has cross-appealed from that part of the judgment denying it relief on its fourth, fifth, and sixth causes of action, and as to part of its third cause of action.

We shall hereinafter refer to defendants as appellants, and to plaintiff as respondent. In referring to respondent,

it will be understood that we include the corporation and/or Mr. Mooney, as they may be considered as one and the same in so far as this litigation is concerned.

Appellants assign error in overruling their demurrer; in denying their plea of *res judicata*; in failing to grant judgment in favor of appellants; in failing to sustain their challenge to the sufficiency of the evidence; and in failing to grant their motion for a new trial. Respondent's assignments of error are based upon the refusal of the court to allow it recovery as asked for in its third, fourth, fifth, and sixth causes of action.

In view of the fact that we are of the opinion that appellants' demurrer to respondent's complaint should have been sustained, it becomes unnecessary to set out the evidence.

In the case of *Standring v. Mooney, supra,* we had before us the same parties here involved, the same contract, deed, and mortgage. In that case, we construed the contract, and from all the facts determined what the relationship of the parties was thereunder. In that consideration and determination, we had in mind the deed and mortgage, and the effect to be given such instruments.

The decision in the cited case was rendered July 9, 1942. Remittitur went down September 12, 1942. Respondent herein did not wait until a determination of the cited case by this court, but started the present action in 1941. However, the judgment in the instant case was not entered until October 13, 1942.

The question to be determined upon the demurrer is whether or not it affirmatively appears from the complaint that respondent was, in fact, a real estate broker under the terms of the contract, and that recovery sought herein is based upon its right to recover for services performed as such broker.

It is admitted that respondent did not have a license to operate as a real estate broker during any of the times herein mentioned, and respondent did not plead, nor did it attempt to prove, that it had such a license.

Appellants contend that under the contract the status of respondent was that of a real estate broker, and that

regardless of the name by which respondent calls the recovery it is seeking herein, such recovery is in fact compensation for services performed under the contract.

On the other hand, respondent contends that, as to the property conveyed to the corporation, the contract did not contemplate that respondent would receive a commission for any sale it might make of such property, but that it would receive only the difference between the mortgage release price and the selling price. Respondent further contends that, under the contract and deed, it was the owner of the property conveyed, and as such it did not come within the definition of a broker, as defined by the statute.

■ It is difficult for us to follow respondent in some of its contentions, in view of what this court said in *Standring v. Mooney, supra.* However, we are of the opinion that the status of respondent under the contract was determined in the cited case. In that case, the Standrings, after having given the notice of the termination of all respondent's rights under the contract of November 6th, brought an action to quiet their title to the lands covered by the deed to the corporation. The lower court sustained a challenge to the sufficiency of the evidence at the close of the plaintiffs' case, and granted a motion to dismiss the action. The Standrings appealed to this court.

While we stated that the sole question to be decided in that case was whether the appellants (Standrings) could enforce their rights in the land under Rem. Rev. Stat., § 785 [P. C. § 7517], relating to actions to quiet title, or whether they must be relegated to the remedy of foreclosing their mortgage, in arriving at a solution of the question presented it became necessary to determine, and this court did determine, the relationship of the parties to that contract. In so far as the relationship of the parties to the contract is concerned, our decision established that fact, which became the law of the case and binding upon the parties thereto, and, in our opinion, is binding upon them in this action. Respondent's contention, in so far as the relationship of the parties under the contract of November 6th is concerned, is so fully

answered by our opinion in the cited case that we quote at some length therefrom:

"It is undisputed that the legal title to the land here in question is in the respondent corporation, subject only to the mortgage in favor of the appellants. In the normal case where land has been conveyed by an unqualified deed, and the grantee has given a note for a part, or even the whole, of the purchase price and has secured the note by executing in favor of the grantor a mortgage on the granted premises, the relation between the parties is ordinarily that of vendor and vendee, and in such instances, the grantee, having become vested with the title, cannot be divested thereof except by foreclosure of the mortgage. The trial court held that this general rule should be applied in this case.

"The situation involved here is, however, actually far different from the normal case, above outlined, of sale, deed, and mortgage back, and consequently takes the case outside the application of the general rule. The contract between the parties to this action demonstrates on its face that the transaction here in question was not an ordinary sale of land. On the contrary, it is clear therefrom that the parties intended to devise and carry into execution a specific plan for *effecting the sale of appellants' land to prospective purchasers,* and that the immediate title thereto was transferred to the respondent corporation simply to facilitate that purpose. Appellants and the corporation therefore *stand in the relation of principal and agent,* rather than that of vendor and vendee. [Citing authority.]

"Every provision in the contract clearly shows that such was the true nature of the relation intended to be created. The corporation assumed no liability for the price of sixty thousand dollars recited in the deed, although it gave a note in that amount to the appellants. This note was specifically made payable in accordance with the terms of the contract, or in other words, in installments as each lot should be sold and the price, or the contract of sale, thereof turned over to the appellants to the extent necessary to discharge the release price thereon. In actuality, therefore, the sixty thousand dollars was to be paid by those whom Mooney should induce to purchase lots from the sales corporation, and respondents were to receive *as commission whatever differential* they might realize over and above the release prices of the respective lots. The contract expressly exempted Mooney from any personal liability, and this must be regarded as applying equally to the corporation. The

agreement further provided that the note and mortgage might be satisfied at any time by reconveying to the appellants any lots then remaining unsold. These factors make it clear and certain that respondents' role was intended to be that of *agents* in a real estate development enterprise.

"Furthermore, the obligations which the appellant G. L. Standring assumed under the contract are utterly inconsistent with the theory that the deed to the respondent corporation was intended to convey title for any purpose other than to facilitate its functioning as a *sales agent*. . . .

"The responsibilities which Mooney assumed under the contract are, on the other hand, just what would be expected *of an agent for the sale of real estate*. Thus, he agreed to pay any advertising expenses, the salaries of any sales help he might employ, the expense of organizing the sales corporation, and other charges of a similar nature. Further, as has already been explained, he was to be *compensated in the manner proper to such an agent, by the payment of commissions* in the form of the right to retain *any differential between the release prices agreed upon in the contract and the prices for which he should actually sell the lots*. His status as a mere agent for the sale of the land is still further indicated by the express provision in the contract conferring upon him, for five years, the exclusive right to sell the appellants' [Standrings] land. . . .

"When to all this we add the fact that the contract recites that the corporation is to be formed

" ' . . . in order to create a proper set-up to handle said transaction [i. e., the subdivision and sale of the property] . . . and to generally constitute the sales agency for said venture,' it becomes unmistakably evident that the whole relationship between the parties was one of principal and agent and requires that the appellants be held to be the beneficial owners of the property here in question, even though the respondent corporation claims legal title thereto *in violation of its contractual duty* to reconvey upon termination of Mooney's agency. . . .

"The judgment is reversed, with direction to the trial court to determine the issues presented by appellants' complaint, in a manner consistent with the views herein expressed, and, unless the respondents refute the appellants' claim of right of forfeiture, enter a decree requiring the respondent corporation to reconvey to appellants all the lots to which it held legal title at the time of service upon respondents of the notice of forfeiture." (Italics ours.)

Under our decision in the cited case, the status of respondent was determined to be that of an agent for the sale of appellants' land, and, for services performed as such agent, respondent was to receive a commission in the form of the right to retain any differential between the release prices agreed upon in the contract and the prices for which the lots were actually sold.

We are clearly of the opinion that, under the decision above referred to, the status of respondent under the contract was determined to be that of a real estate broker; that such determination was correct; and that respondent's status was that of a real estate broker clearly appears from the complaint and the exhibits attached to and made a part of the complaint in this action.

While, as we have stated, respondent is bound by our determination in the cited case, relying as it does in this case upon the same contract, deed, and mortgage to establish its rights herein as were relied upon in the cited case, even without and regardless of that decision, we are of the opinion that the complaint in the present action, when examined in connection with the contract, shows that the status of respondent was in fact that of a real estate broker, and that what it is actually attempting to recover is compensation for its services as such broker.

In this connection we call attention to a portion of Rem. Rev. Stat., § 8340-4 [P. C. § 5724-4], which provides:

"Within the meaning of this act, a real estate broker is a person who, for a compensation or promise thereof, performs one or more acts of selling or offering for sale, buying or offering to buy, negotiating or offering to negotiate, either directly or indirectly, whether as an employee of another or otherwise, the purchase, sale, exchange, lease or rental of real estate or interest therein for another person."

While it is true the *Standring* case, *supra,* was reversed and remanded, it was so remanded only for the purpose of determining whether or not the contract had been so breached by the respondents as to entitle the Standrings to forfeit it.

We desire to call attention to the cases of *Grammer v. Skagit Valley Lbr. Co.*, 162 Wash. 677, 299 Pac. 376, and *Irons Inv. Co. v. Richardson*, 184 Wash. 118, 50 P. (2d) 42, wherein we had occasion to refer to the real estate broker's act. In both the cited cases, the plaintiff contended it was not a real estate broker, within the meaning of our statutes; in both cases a demurrer to the complaint was sustained by the trial court and the action dismissed; and in both cases we affirmed the decision of the lower court. We do not cite these cases as being analogous on the facts, but only as indicating the attitude of this court in applying the real estate broker's act to contracts which it might be said were attempted evasions of the act.

Having concluded that the status of respondent was that of a real estate broker, and it being admitted that respondent did not at any time have a license so to operate, and respondent not having pleaded or proved that it had such a license, as required by Rem. Rev. Stat., § 8340-20 [P. C. § 5724-20], it follows that appellants' demurrer to the complaint should have been sustained, as should their challenge to the sufficiency of the evidence at the close of respondent's case.

The judgment of the trial court is reversed and remanded, with direction to dismiss the action.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.

January 20, 1944. Petition for rehearing denied.