[No. 404-3. Division Three. December 5, 1972.]

WILLIAM W. MAIN, SR., *et al.*, *Appellants*, v. STANLEY TAGGARES *et al.*, *Respondents*.

*Leslie L. Woods, Michael F. Keyes, Woods & Keyes,* and *Kelly Hancock,* for appellants.

*Clifton W. Collins,* for respondents.

EDGERTON, J.—The trial court held valid an agreement by which William W. Main, Sr., plaintiff, agreed to pay Stanley Taggares, defendant, $28,000 less certain expenses. The contract was made contemporaneously and in connection with a real estate sale agreement between plaintiffs and a third party. Plaintiffs contend the contract with defendant was for a real estate broker's commission, to which defendant, having no real estate broker's license, legally was not entitled. They also sought refund of $6,000 previously paid defendants under the contract. From the judgment for the defendants, plaintiffs appeal.

Since all negotiations between the parties were conducted between William W. Main, Sr. and Stanley Taggares, the parties will be referred to in the singular.

Plaintiff, Main, and defendant, Taggares, owned adjoining ranches in Okanogan County. Plaintiff's ranch consisted of 900 acres. Defendant's ranch was much larger. Sometime in 1969 defendant inquired of plaintiff whether he wished to sell his land. Plaintiff answered in the affirmative provided he could receive a net of $60,000. Defendant found a buyer for his own land and one who would pay $88,000 for plaintiff's. He so informed plaintiff. On August 26, 1969, at defendant's suggestion, plaintiff went to the office of R. E. Mansfield, an Okanogan lawyer, and there executed a contract for the sale of his farmland for the sum of $88,000. The name of the purchaser was blank. The terms were $26,000 down and installments of $15,500 or more annually until paid, with interest at the rate of 7 percent per annum. The contract was sent to California, where it was executed, and the purchaser's name, "Louis A. Petrie, nominee" filled in. At the time plaintiff signed the sale contract he also executed the following agreement:

### AGREEMENT

Whereas, Stanley Taggares has heretofore at my request materially assisted me with financial planning and analysis in respect to my business affairs, and especially with reference to my real estate holdings in Okanogan

County, Washington, and with his said assistance I have been enabled to find an advantageous market for all said lands with reservation of valuable privileges of possession and prospective employment, and I have entered into negotiations for sale thereof to my substantial advantage,

Now, Therefore, for recognized value received and to be received, I agree that if said sale now in negotiation be consummated within six months and on terms of cash or down payment of 29% and payment of the remainder over a period of five years or less at 7% interest payable annually, that I will pay to said Stanley Taggares all of the purchase price over the sum of $60,000, less excise tax, revenue stamps, and federal income tax liability imposed upon me, if any, from any sale price in excess of $60,000.00, which amount I agree to pay out of purchase price proceeds, as received, $6000.00 from the down payment of $26,000.00 and thereafter in the same proportion as the balance of the obligation herein created, in relation to the sum of $62,000.00, bears to each installment received, and in order to assure the convenient and prompt fulfillment of this agreement, I agree to establish an escrow or collection agency agreeable to both parties for receipt and disbursement of the gross sale installments, upon the execution of said contract of sale of real estate.

Dated this 26th day of August, 1969.

/s/ William W. Main

William W. Main

Accepted on the foregoing terms:
/s/ Stanley Taggares

Stanley Taggares

Mansfield, the attorney who drew both the agreements, closed the sale and acted as escrow agent until plaintiff commenced suit. As escrow agent he received the downpayment of $26,000 and the first annual installment of $19,568.75. Of the downpayment plaintiff received $20,000 and defendant $6,000. The first annual payment was to be divided $12,621.84 to plaintiff and $6,946.91 to defendant. However, plaintiff's suit stopped payment and the money

was eventually deposited with the clerk pending the outcome of the case.

The trial court concluded that the real estate contract and the agreement to compensate defendant were made "for the purpose of arranging a 'straight-across' transaction to avoid entering into two simultaneous real estate conveyances, and the parties never intended this to be a real estate commission arrangement." It further adjudged that defendant's share of the monies held by the clerk should be paid over to the defendant, and that plaintiff in the future should pay such sums as he had agreed upon with the defendant in their contract. To these conclusions the plaintiff assigns error.

The dispute in this case is legal, not factual. Plaintiff asserts that his agreement with defendant was a broker's contract for a real estate commission which defendant was ineligible to receive and that, therefore, the contract was illegal and void. He asks refund of the initial $6,000 paid to defendant and to be absolved from all future payments.

RCW 18.85.010 (1) (since amended by Laws of 1972, 1st Ex. Sess., ch. 139) defines real estate broker as follows:

[A] person, acting independently, who for commissions or other compensation, engages in the purchase, sale, exchange, rental, or negotiation therefor, of real estate, or interests therein, and for business opportunities or interest therein, belonging to others, or holds himself out to the public as being so engaged;

In the instant case plaintiff contends defendant acted as a real estate broker. We agree. Independently, for compensation, he procured a buyer and negotiated the sale of plaintiff's real estate. While the preamble to the agreement recites other purported considerations for the sums to be paid defendant, a search of the record does not disclose any factual basis for such claim. The evidence is that despite this recital, defendant's services to plaintiff were rendered in connection with this one transaction alone. Proof of any other assistance is lacking. Defendant invested no capital

and pledged no credit. He did nothing but find a buyer. The agreement by its terms plainly shows the payments to defendant were compensation for his services in the sale of plaintiff's ranch only. It recites: "If said sale now in negotiation be consummated" on the terms set forth, "I will pay to said Stanley Taggares all of the purchase price over" a certain sum. The sums claimed to be due by defendant, or to become due, are solely the fruit of his services in negotiating a sale of real estate. The contract was for a broker's commission. This is so, notwithstanding defendant's argument that it was not the intention of the parties to make a brokerage contract and, since they did not intend it to be one, it was not. This is a non sequitur. The name given an instrument does not necessarily determine what it is in law. *Shorewood, Inc. v. Standring*, 19 Wn.2d 627, 144 P.2d 243 (1943).

Defendant argues that this was a "straight-across" sale made by plaintiff to the buyer and is tantamount to a sale by plaintiff to defendant and then by defendant to the ultimate buyer. Originally perhaps this was intended but it was not what actually was done.

In denominating the sale from plaintiff to Petrie a "straight-across" transaction, a direct sale made could not be converted into a sale and resale in order to avoid the payment of a transaction excise tax and for a set of conveyancing stamps. This would have involved a fictional constructive transfer to Taggares, the defendant, which would contravene the statute of frauds. RCW 64.04.010 requires that every conveyance of real estate "shall be by deed."

Admittedly defendant did not have a license to operate as a real estate broker at any time involved in this matter. RCW 18.85.100 (since amended by Laws of 1972, 1st Ex. Sess., ch. 139) provides:

It shall be unlawful for any person to act as a real estate broker, associate real estate broker, or real estate salesman without first obtaining a license therefor, and otherwise complying with the provisions of this chapter.

No suit or action shall be brought for the collection of

compensation as a real estate broker, associate real estate broker, or real estate salesman, without alleging and proving that the plaintiff was a duly licensed real estate broker, associate real estate broker, or real estate salesman at the time the alleged cause of action arose.

RCW 18.85.100 controls this case and bars defendant from collecting any further sums under the compensation agreement. *Shorewood, Inc. v. Standring, supra.* The trial court erred when it held to the contrary.

Plaintiff urges that the holdings of *Irons Inv. Co. v. Richardson,* 184 Wash. 118, 50 P.2d 42 (1935) and *Shorewood, Inc. v. Standring, supra,* entitle him to recover the $6,000 already paid defendant. We disagree.

 *Irons Inv. Co.* and *Shorewood, Inc.* follow RCW 18.85.100 and hold, only, that to recover a commission a real estate broker must have a broker's license at the time he renders the service. Neither the statutes nor the case law give one who sells his land by an unlicensed broker the right to sue for refund of a commission once paid. RCW 18.85, dealing with the licensing of real estate brokers, both prohibits a suit for compensation by one not licensed as a real estate broker (RCW 18.85.100) and makes it a gross misdemeanor to act as a real estate broker without a license. RCW 18.85.340. The law that requires real estate brokers to be licensed is penal in nature and must be strictly construed. *Johnson v. Rutherford,* 32 Wn.2d 194, 200 P.2d 977 (1948); *Salisbury v. Alskog,* 144 Wash. 88, 256 P. 1030 (1927).

> When the law imposes a punishment which acts upon the offender alone, and it is not a reparation to the party injured, . . . it will not be presumed that the legislature intended the punishment to extend farther than it is expressly stated.

2 Sutherland, *Statutory Construction* § 3303, at 236 (3d ed. F. Horack 1943). The legislative act before us is not remedial in nature and does not afford a remedy to a party who deals with an unlicensed broker. The act, penal in nature, was passed by the legislature to assure the fiscal responsi-

bility and competency of realtors. Thus the statute in this case does not expressly void contracts entered into by unlicensed brokers, but rather, prohibits those brokers from suing to recover a commission. In view of the above rationale plaintiff is not entitled to recover the $6,000 previously paid defendant.

In view of the foregoing conclusions it is unnecessary to dwell at length upon plaintiff's assignment of error that the lawyer Mansfield was permitted to testify in violation of the attorney-client privilege. Nevertheless, we have carefully examined the record in this regard and find no basis for the contention. The attorney's testimony did not deal with privileged matters.

From its findings the trial court drew the following conclusion of law:

> That the avoidance of the one percent (1%) real estate excise tax on the first proposed conveyance in the amount of $60,000 is illegal and to avoid multiplicity of suits, the Defendant should pay $600.00 plus late penalties to the Registry of this Court prior to entry of judgment to be paid by said Clerk of Court to the Treasurer of Okanogan County upon finality of judgment.

In light of this opinion that there was but one sale, direct from seller to buyer, this conclusion is error.

We agree with the trial court when he said, "The entire problem in this case arose from the desire of defendant to save transfer taxes." The manner in which this transaction was finally put together did not require the payment of this tax twice.

The judgment of the trial court is reversed and the case is remanded for entry of a judgment in conformity with this decision.

MUNSON, C.J., and GREEN, J., concur.